**Wilfredo S. ALMODOVAR, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1083 S 372.**

Supreme Court of Indiana.

June 22, 1984.

Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for appellant; Lex L. Venditti, Merrillville, of counsel.

Linley E. Pearson, Atty. Gen. of Ind., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Wilfredo S. Almodovar was found guilty of murder by a jury in the Lake Superior Court and was sentenced to an imprisonment term of fifty years. He now directly appeals and raises the following five issues:

1. sufficiency of the evidence;

2. whether the trial court erred by denying Appellant's motion for directed verdict;

3. whether the trial court erred by permitting a witness to testify about the caliber of weapons he observed;

4. whether the trial court erred by admitting an exhibit over Appellant's chain of custody objection; and

5. whether Appellant's sentence constitutes cruel and unusual punishment.

I

■ Appellant first asserts that the evidence does not support his murder conviction. Specifically, Appellant argues that the State failed to present sufficient evidence to negate his claim of self-defense. Our standard of review for sufficiency questions is the same in all cases. This Court will consider only the evidence most favorable to the State with all logical inferences drawn therefrom. *Harris v. State*, (1981) Ind., 425 N.E.2d 112. We will reverse a verdict not supported by sufficient evidence to preserve the constitutional right to due process. A verdict will not be disturbed, however, when there is substantial probative evidence from which the trier of fact could reasonably infer guilt beyond a reasonable doubt. *Harris, supra; Williams v. State*, (1978) 269 Ind. 265, 379 N.E.2d 981. In reviewing a lower court's findings, we will not reweigh the evidence. *Hooks v. State*, (1980) Ind., 409 N.E.2d 618.

■ When a self-defense claim is raised casting some reasonable doubt as to guilt, the State has the burden of proving beyond a reasonable doubt that the defend-

ant did not meet at least one of the elements necessary to prove that justification. *Cox v. State*, (1981) Ind., 419 N.E.2d 737; *Loyd v. State*, (1980) 272 Ind. 404, 398 N.E.2d 1260. Self-defense is proved by showing that the defendant acted without fault, was in a place where he had a legal right to be, and was in real danger of death or great bodily harm or was in such apparent danger as caused him in good faith to fear death or bodily injury. *Cox, supra; Berry v. State*, (1978) 268 Ind. 432, 376 N.E.2d 808. In Indiana, using deadly force for self-defense is justified only when a person reasonably believes such force is necessary to prevent death or serious bodily injury. Ind.Code § 35–41–3–2(a) (Burns Supp.1982). Even if a person is assaulted, the trier of fact can rightfully find that a reasonable person in the same circumstance would not have been placed in reasonable fear of death or great bodily harm and therefore would not have been justified in the use of deadly force in self-defense. *Loyd, supra.* The final determination of whether the State has met its burden to negate Appellant's claim rests with the trier of fact. A conviction in spite of a claim of self-defense will be reversed only if no reasonable person could say that the self-defense issue had been proved beyond a reasonable doubt.

■ In the present case, the probative evidence most favorable to the State was substantial. The facts adduced at trial show that during the early morning hours of January 15, 1983, Appellant and Kathleen Gillilland were socializing in the "Elk's Club" bar in Gary. While in the bar, Gillilland apparently stood waiting outside a bathroom door where she was accosted by Darroel Pittman, a stranger, in an angry manner. This upset Appellant who confronted Pittman and agreed to go outside with him to resolve the matter. Jermell Atkins, an employee of the Gary Post Tribune, testified that he was just outside of the Elk's Club delivering newspapers and saw Appellant and Pittman exit from the Club and talk between themselves. Atkins noticed that Pittman had a gun, which he appeared to try to hide, when he left the Club. Thereafter, Atkins observed Appellant walk across the street with a shiny black object which he described as a gun. Atkins then observed Pittman cross the street towards Appellant when a gun fell from Pittman's coat. Gillilland picked up this gun. Atkins testified that he next saw Appellant run up to Pittman, kick him twice and shoot his gun three times hitting Pittman twice. Atkins testified that Pittman was lying on his stomach immediately before the shooting. After the shooting, Appellant and Gillilland left in a car. Maurice Blake, another Post Tribune employee, testified that he also witnessed this shooting and observed Appellant shoot Mr. Pittman who was unarmed and on the ground pleading for his life. Blake also testified that Appellant pointed his gun at him and told him to "be still."

The finder of fact properly decided that the above recited evidence was contradictory to and more persuasive than Appellant's story claiming self-defense. All of this evidence supports the jury's conclusion that a reasonable person in Appellant's situation would not in good faith have been caused to fear death or bodily injury at the moment when the shooting occurred. Further, the evidence is sufficient to support findings that Appellant was in no real danger of death or great bodily injury and that Appellant did not act without fault. Appellant's claim of self-defense was properly rejected upon the jury's finding that Appellant failed to prove at least one of the requisite elements of self-defense. Appellant's request for review on sufficiency grounds therefore amounts to no more than an invitation to reweigh the evidence. This we will not do.

## II

■ Appellant next alleges that the trial court erred by denying his motion for directed verdict. Appellant's said motion was made and denied at the close of the State's case-in-chief. Appellant thereafter presented evidence in his own behalf but never renewed his motion for directed ver-

dict. The alleged error therefore was waived. *Buck v. State,* (1983) Ind., 453 N.E.2d 993; *Peckinpaugh v. State,* (1983) Ind., 447 N.E.2d 576.

### III

■ Appellant next contends that the trial court erred by permitting State's witness Maurice Blake to testify about the caliber of weapons he observed. Appellant specifically argues that Blake was not properly qualified as an expert witness on weapons and therefore should not have been allowed to testify about the caliber of the particular weapons he observed. During the State's direct examination of Blake, the following exchange took place at the bench and outside of the jury's hearing:

"BY MR. SCHNEIDER [Appellant's trial counsel]:

I hate to interrupt, but apparently Mr. Davis in opening argument, he had at some point said he was going to have, I believe, Mr. Blake testify as to the kind of weapon. Before we get into that, I think there's going to have to be some sort of—Anticipating that this is going to happen, during his direct examination perhaps we better have some hearing as to his qualifications as an expert to determine this because otherwise, I object to it.

BY THE COURT:

Well, okay. You'll have to ask the foundation questions.

BY MR. DAVIS [Prosecutor]:

I plan to, what experience he had with guns.

BY THE COURT:

Okay."

Blake subsequently was directly examined as follows:

"[BY PROSECUTOR DAVIS]:

All right. Now about those guns, the first gun that you saw—Well, first of all. Let me ask you this. Do you know much about guns?

A  Yes.

Q  How is it that you come by that knowledge?

A  I used to be a private detective.

Q  You able to recognize different makes of guns?

A  Yes.

Q  And how is that that you're able to do that?

A  As working as an investigator, they trained us for different guns that we had to use and different guns that we may come in contact with.

Q  All right. When you first saw the defendant with a gun, were you able to determine what kind of gun it was?

A  Yes.

BY MR. SCHNEIDER:

Objection, improper foundation. This witness is not qualified as an expert.

BY THE COURT:

Well, he may answer the question, however.

BY THE WITNESS:

A  Yes.

BY MR. DAVIS:

Q.  What kind of gun did you believe it to be?

A  A .25 automatic.

Q  Okay. Could you describe the gun that Darroel had?

A  It was a nickel-plated .38."

This is the extent of Blake's purported expert testimony about guns during his direct examination. We now find that Blake's testimony was admissible because it clearly was about what he personally had observed of the crime. The fact that Blake could specifically describe the guns he saw did not disqualify him from testifying as a lay witness but rather provided the jury with additional information from which to determine what weight to ascribe to his testimony. This Court previously has held that the trial court in its discretion may determine that a lay witness is qualified and allowed to give opinion testimony. *Rowan v. State,* (1982) Ind., 431 N.E.2d 805; *Hedrick v. State,* (1982) Ind., 430 N.E.2d 1150. Since Appellant does not claim that Blake's testimony created some undue prejudice, we find that the trial court did not abuse its discretion in allow-

ing Blake to testify about the guns as a lay witness. Accordingly, we find it unnecessary to decide whether the State properly qualified Blake as an expert witness. Of course if Blake was offered as an expert witness, that determination was also within the trial court's discretion and the extent of Blake's knowledge would not affect the admissibility of his testimony but only its weight. *Travelers Indemnity Co. v. Armstrong*, (1982) Ind., 442 N.E.2d 349; *Jones v. State*, (1981) Ind., 425 N.E.2d 128. There is no error on this issue.

### IV

■ Appellant also argues that the trial court erred by admitting State's Exhibit 2 when the State allegedly had not provided a proper foundation for its admission by showing a complete chain of custody. State's Exhibit 2 was a spent .25 caliber, automatic shell casing found by Gary Police Officer Phil Strong about one foot from the victim's head at the crime scene. At trial, Strong identified the casing which he had marked with his initials when he found it. Strong testified that after marking the casing, he placed it inside an evidence package, stapled and sealed the package, and placed the package in the police property room. He next saw the Exhibit still inside the evidence package on the day of trial in the prosecutor's property room. Strong testified that Detective Bradley had removed the evidence package from the police property room and placed it in the prosecutor's property room.

When Exhibit 2 was offered for admission, Appellant objected on chain of custody grounds but was overruled. He now argues that the State should not have been able to admit Exhibit 2 without Detective Bradley's testimony to show that the Exhibit stayed free of tampering in the Gary Police property room until he personally brought it to the prosecutor's property room. We find, however, that Bradley's testimony was not required. This Court has held that the identification predicate for admission is established when an investigator scratches his initials or other

unique mark upon a piece of fungible evidence such as a gun or bullet and later testifies at trial that by reason of his recognition of the initials or mark, he can swear that the item in court is the same one about which his testimony is being made. *Babbs v. State*, (1983) Ind., 451 N.E.2d 655; *Lloyd v. State*, (1983) Ind., 448 N.E.2d 1062, *reh. denied.* Appellant's claim of an inadequate foundation for Exhibit 2 accordingly must fail. The trial court did not err in this regard.

### V

■ Finally, Appellant claims that the trial court's sentence for his murder conviction constitutes cruel and unusual punishment in violation of the Indiana and United States Constitutions. Although this is how Appellant framed this issue in his motion to correct errors, Appellant actually argues on appeal that the trial court erred in its sentencing because it allegedly did not make a specific showing in the record of what aggravating and mitigating factors it found and how it reconciled them. Appellant normally would have waived this issue by misstating it but, because we are especially concerned about possible sentencing errors, we shall consider his issue as argued.

■ Appellant was convicted of murder, Ind.Code § 35–42–1–1 (Burns 1979), which warrants sentencing to a fixed term of forty years with not more than twenty years added for aggravating circumstances or not more than ten years subtracted for mitigating circumstances. Ind.Code § 35–50–2–3 (Burns 1979). The trial court sentenced Appellant to fifty years. This Court consistently has held that a trial court has judicial discretion to aggravate or mitigate a sentence from the statutory prescription with regard to Ind. Code § 35–4.1–4–7(b), (c) and (d) [§ 35–50–1A–7(b), (c) and (d) (Burns 1979) (repealed effective September 1, 1983)]. When a trial court exercises this judicial discretion, however, it must make a statement of its reasons. *Spinks v. State*, (1982) Ind., 437 N.E.2d 963; *Page v. State*, (1981) Ind., 424

N.E.2d 1021, *on remand* (1982) Ind., 442 N.E.2d 977, *reh. denied* (1983). In the instant case, the trial court stated in its sentencing order the following reasons for imposing an aggravated sentence:

> "There are susbstantial (sic) grounds tending to excuse or justify the crime though failing to establish a defense of self-defense.
>
> The Defendant has recently violated parole.
>
> The Defendant has a history of criminal activity as follows:
>
> > 1978, Assault and Battery with intent to kill."

We now find that the trial court's findings constituted proper aggravating circumstances pursuant to Ind.Code § 35–4.1–4–7(c)(1) and (2). While this entry in the record is adequate for our review in this particular case, it is only nominally so. The statement of the trial court in justification of a sentence should be complete in itself. This Court should not be required to engage in any interpretation of the statement. The statement should be facially clear and should specifically enumerate each of the statutory factors of mitigation and aggravation relied on in justifying the enhanced sentence. Further, the statement must be factually correct and consistent with the rest of the record.

This Court on review will revise a sentence only when it is manifestly unreasonable in light of the nature of the offense and the character of the offender. Ind.R. App.Rev.Sent. 2. The record reflects that Appellant murdered the defenseless victim in a most callous and depraved way. His claim of self-defense has been rightly rejected. This Court therefore finds that this aggravated sentence is not manifestly unreasonable in light of the nature of the offense and the character of the offender. We also find that since Appellant's sentence is within the statutory framework provided by our General Assembly, it is not cruel and unusual punishment. *Allen v. State*, (1983) Ind., 453 N.E.2d 1011.

The judgment of the trial court is affirmed in all respects.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.