**Alphonso BIRDSONG, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 49S00–9603–CR–190.

Supreme Court of Indiana.

Sept. 4, 1997.

Kurt A. Young, Nashville, for appellant.

Pamela Carter, Attorney General, Michael K. Ausbrook, Deputy Attorney General, Office of the Attorney General, Indianapolis, for appellee.

SELBY, Justice.

Defendant Alphonso Birdsong ("defendant") was convicted, after a court trial, of two counts of murder and one count of attempted murder. The court then sentenced defendant to serve sixty year sentences on each count of murder and a fifty year sentence on the attempted murder count, all to be served concurrently. On this direct appeal, defendant raises three issues: 1) Whether there was sufficient evidence to convict defendant of murder and attempted murder? 2) Whether the trial court properly admitted, over objection, a transcript of a witness' Grand Jury testimony? 3) Whether the trial court properly sentenced defendant? We answer all three issues affirmatively and affirm the convictions and the sentence.

### FACTS

On the night of October 6, 1994, Antonio McDowell ("McDowell") saw Sam Miller ("Miller") and Sharon Colquit ("Colquit") arguing in the hallway of their apartment building. Colquit appeared very intoxicated and had trouble speaking and walking. Miller threw a bottle at Colquit and told her not to come back anymore.

About fifteen minutes later, McDowell heard Colquit knocking on his window, she asked to be let in. Though McDowell did not let her in, Colquit managed to get back into the apartment building. Soon thereafter McDowell heard Colquit knock on defendant's door several times. Defendant let her into his apartment. A few minutes later, McDowell heard Colquit screaming. He looked out of his door and saw that defendant was dragging Colquit down the stairs by her legs. They were punching at each other, and defendant hit Colquit in the mouth.

A couple of minutes later, McDowell heard some kicking. He looked out of his door and saw Colquit kicking on defendant's door, and Miller was with her. Colquit was carrying a can of wasp spray. Miller was carrying a gun by its barrel. The door of defendant's apartment opened and both Colquit and Miller went inside.

Colquit was out of McDowell's sight inside of defendant's apartment, but McDowell saw Miller raise his right hand, the hand with the gun in it. Miller then slipped on a carpet by the door and dropped the gun. McDowell saw defendant strike Miller three or four times in his head with an axe. As defendant was striking Miller with the axe, McDowell, who was still standing in his own doorway, called to defendant, "What the hell are you doing?" (R. at 101.) In response, defendant pointed and shot a gun at McDowell, hitting the door frame near McDowell's head. McDowell heard five more shots fired as he ran out of the building.

When the police arrived at the scene, defendant opened the door for them. Defendant led the police to the bodies of Miller and Colquit; both bodies had been chopped by an axe and shot. Defendant admitted to killing both Miller and Colquit. A Grand Jury indicted defendant of the murders of Miller and Colquit and of the attempted murder of McDowell.

### DISCUSSION

### I.

Defendant's first claim concerns whether there was sufficient evidence before the court to convict him of murder and attempted murder. Defendant argues that the facts establish that he committed the crimes charged against him legally in self-defense. Defendant further argues that the State failed to disprove his claim of self-defense. Thus, he concludes, there was insufficient evidence to support his convictions.

A valid claim of self-defense allows a legal justification for using otherwise impermissible force to protect oneself from the threats of another. *See* IND.CODE § 35–41–3–2 (1988). One may use deadly force against another in self-defense if "he reason-ably believes that that force is necessary to prevent serious bodily injury to himself or a third person or the commission of a forcible felony." I.C. § 35–41–3–2(a). One may also use deadly force against another "if he reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on his dwelling or curtilage." I.C. § 35–41–3–2(b). Thus, one may use deadly force if he reasonably believes that such force is necessary to defend himself or his property. *See Crisler v. State,* 509 N.E.2d 822, 823 (Ind.1987); *Farley v. State,* 243 Ind. 445, 448, 185 N.E.2d 414, 415 (1962).

Once a defendant has created a reasonable doubt as to his guilt by raising a self-defense claim, the burden shifts to the State. The State must prove, beyond a reasonable doubt, that the defendant's use of force was not justified. *Almodovar v. State,* 464 N.E.2d 906, 908 (Ind.1984). The State can prove, for example, that defendant was not where he had a right to be or that defendant used excessive force. *Tunstill v. State,* 568 N.E.2d 539, 541 (Ind.1991). The determination of whether the State has met this burden is a question of fact for the trier of fact. *Crisler,* 509 N.E.2d at 823; *Almodovar,* 464 N.E.2d at 908. The trier of fact is not precluded from finding that a defendant used unreasonable force simply because the victim was the initial aggressor. *Tunstill,* 568 N.E.2d at 542; *Almodovar,* 464 N.E.2d at 909.

We review a challenge to this factual conclusion as we would any other sufficiency of the evidence challenge. *Tunstill v. State,* 568 N.E.2d at 541; *Crisler,* 509 N.E.2d at 823. On review, we neither reweigh the evidence nor judge the credibility of the witnesses. Instead, we look to the evidence most favorable to the verdict, and all reasonable inferences to be drawn therefrom. If the evidence and inferences provide substantial evidence of probative value from which a reasonable trier of fact could infer guilt beyond a reasonable doubt, we will not disturb the conviction. *Id.*

We find that sufficient evidence exists to sustain defendant's convictions. With

respect to the two murder convictions, defendant did present evidence of a self-defense claim. Among the evidence defendant presented was that Miller and Colquit were intoxicated and that, while armed with a gun and a can of wasp spray respectively, they forced their way into defendant's apartment. Therefore, defendant presented evidence that he was in a place where he had a right to be, was in fear of serious bodily injury, and was preventing an unlawful entry of his home. However, the fact that the victims were the initial aggressors is not dispositive as to whether deadly force was a reasonable response. In this case, the trial court was also presented with evidence that supported the State's argument that defendant used unreasonable force. For example, Colquit was armed only with a can. Also, though Miller had a gun, he was carrying the gun by its barrel and it came out of his hand as soon as he entered defendant's apartment. Even after Miller lost the gun, defendant continued to chop him with the axe. Furthermore, both Miller and Colquit were chopped and shot several times, even after they were incapacitated. Therefore, there was sufficient evidence to support the murder convictions. With respect to the attempted murder conviction, there also existed evidence that defendant employed unreasonable force and, thus, did not validly act in self-defense. For example, McDowell was unarmed and standing across the hallway in his own doorway when defendant shot at him. Because there existed sufficient evidence from which the court could find that defendant did not validly act in self-defense and that he was guilty as charged, we will not disturb the trial court's decision.

## II.

Defendant next claims that the trial court erred when it admitted, over objection, a transcript of McDowell's Grand Jury testimo-ny. Defendant argues that the transcript was inadmissible because it is hearsay.[1] Furthermore, defendant argues that the allegedly inadmissible evidence prejudiced him because it impermissibly bolstered McDowell's credibility, a credibility which defendant argues was crucial to his convictions.

█ Once a witness has been impeached on cross-examination by reference to a prior inconsistent written statement, a party may rehabilitate its witness on redirect by introducing other pertinent portions of the statement. *Evans v. State*, 643 N.E.2d 877, 882 (Ind.1994); *Hudgins v. State*, 451 N.E.2d 1087, 1090 (Ind.1983). After a witness' credibility has been attacked using portions of a prior statement, the fact finder "must be permitted to determine for itself the extent of the inconsistencies in context." *Evans*, 643 N.E.2d at 882. This proposition must be even more true when the alleged discrepancies relate to small details while the majority of the statements are consistent. *Id.* When prior statements are used to impeach and rehabilitate a witness they are not hearsay because they are not used to prove the truth of the matter asserted. *See Humphrey v. State*, 680 N.E.2d 836, 838–39 (Ind.1997); 13B R. MILLER, INDIANA PRACTICE: COURTROOM HANDBOOK ON INDIANA EVIDENCE 176, 179 (1996–97 ed.).

█ In the present case, defendant used the Grand Jury testimony several times in an attempt to impeach McDowell's testimony. For example, defendant used the testimony in an attempt to impeach McDowell on the time when McDowell arrived at his home and on when exactly defendant shot at McDowell. The State could respond to these attacks on McDowell's credibility by introducing the testimony to put the isolated inconsistencies in context. The trial court did not err in admitting the Grand Jury testimony.

---

**1.** The State contends that defendant has waived a hearsay argument because the trial objection was not on hearsay grounds. Defendant's objection at trial was that the State could not introduce the entire testimony to rehabilitate McDowell when only part of the testimony had been used for impeachment, and that the introduction of the entire testimony would impermissibly bolster the credibility of the witness. It would indeed be a stretch to say that this was a hearsay objection. Thus, defendant has waived this argument as a party may not object on one ground at trial and another on appeal. *Bradford v. State*, 675 N.E.2d 296, 302–03 (Ind.1996). Nevertheless, we will address this issue on its merits because in answering defendant's objection at trial, we answer his objection on appeal.

.

■ Even assuming that the trial judge erred in admitting all, rather than parts, of the Grand Jury testimony, when a trial is before a bench and not a jury, we generally presume that the trial judge considers only relative and probative evidence in reaching its decision. *Coleman v. State*, 558 N.E.2d 1059, 1062 (Ind.1990); *Misenheimer v. State*, 268 Ind. 274, 374 N.E.2d 523, 528 (1978). We presume that evidence, which might be inadmissible and prejudicial when placed before a jury, is disregarded by the court when making its decision. *Misenheimer*, 374 N.E.2d at 528; *Kleinrichert v. State*, 260 Ind. 537, 297 N.E.2d 822, 826 (1973). Unless the defendant presents evidence to the contrary, we presume no prejudice. *Id.*

In the present case, defendant has not shown any portions of the Grand Jury testimony that were prejudicial in a way that McDowell's testimony was not. Though slight inconsistencies exist, the vast majority of the testimonies are the same. Furthermore, the "drumbeat" repetition that this Court has in the past ruled to be error, *see Modesitt v. State*, 578 N.E.2d 649 (Ind.1991), does not exist in this case. McDowell first testified and was cross-examined. Then the transcript was admitted to place the inconsistencies in context. There was no prejudice.

### III.

■ Defendant's final claim asks this Court to consider whether the trial court properly sentenced him. Before sentencing defendant, the court considered the brutality of the crimes as an aggravating factor balanced against the mitigating factors of provocation, drug influence at the time of the crime, and lack of a felony record. The court determined that the aggravating factor outweighed the mitigating factors and that defendant was to be sentenced to the maximum term on each count,[2] though to be served concurrently for a total of sixty years. Defendant argues that the trial court improper-

ly found aggravating and mitigating factors and that his sentence was manifestly unreasonable.

■ In general, sentencing decisions are left to the sound discretion of the trial court, and such decisions will be reversed only upon a showing of a manifest abuse of that discretion. *Sims v. State*, 585 N.E.2d 271, 272 (Ind.1992). When a trial court chooses to enhance a sentence above the presumptive sentence, it must state all significant aggravating and mitigating factors, explain why each is aggravating or mitigating, and articulate the balancing process which determined that the aggravating factors outweighed the mitigating factors. *Harris v. State*, 659 N.E.2d 522, 527 (Ind.1995). One aggravating factor alone is enough to validly enhance a sentence. *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind.1993). The trial court is not obligated to explain why it did not find a factor to be significantly mitigating, nor must it weigh a mitigator the way defendant suggests the mitigating factor should be weighed. *Widener v. State*, 659 N.E.2d 529, 533 (Ind.1995). However, the trial judge "may not ignore facts in the record that would mitigate an offense, and a failure to find mitigating circumstances that are clearly supported by the record may imply that the trial court failed to properly consider them." *Id.* at 534.

■ In the present case, the trial court did not abuse its discretion in sentencing defendant. The court identified and explained the aggravating and mitigating circumstances which it found to be significant. As an aggravating circumstance, the court noted the "shear [sic] brutality" of the crime and the fact that defendant continued his attack well after the victims were incapacitated. Thus, the court properly used the particularized circumstances of this crime as an aggravating factor. *See Widener*, 659 N.E.2d at 532. As to the mitigating factors, defendant argued to the court that (1) the

2. For the time period in question, the maximum sentence for murder was sixty years. I.C. § 35–50–2–3 (1994). On the date that defendant committed his crimes, there were two murder sentencing statutes in effect. Though both had the same maximum sentence, the presumptive sentences were different. To properly sentence un-

der these conditions, a trial court must have used the lesser of the presumptive sentences (forty years). *Smith v. State*, 675 N.E.2d 693 (Ind. 1996). Although defendant does not raise the issue, we note that it would be immaterial as the trial court obviously meant to maximize each of the murder sentences.

crime was the result of circumstances unlikely to recur, (2) the victims facilitated the offense, (3) substantial grounds existed tending to excuse the act but not to justify a defense, (4) the act was done under provocation, and (5) the defendant had little criminal history. The court found as mitigating that defendant was provoked, that defendant lacked a felony record, and that defendant committed the crimes under the influence of narcotics. Having identified and described the aggravating and mitigating factors, the court then weighed them and determined that the aggravator outweighed the mitigators and that defendant should receive the maximum sentence on each count, but to be served concurrently. We find that the court did not abuse its discretion.

Moreover, we find that the sentence was not manifestly unreasonable. If a particular sentence is authorized by statute, a reviewing court will not revise the sentence unless it is manifestly unreasonable in light of the nature of the offense and the character of the defendant. Ind.Appellate Rule 17(B).

### CONCLUSION

We affirm the convictions and the sentence.

SHEPARD, C.J., and DICKSON, SULLIVAN, and BOEHM, JJ., concur.