**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 03 2014, 9:25 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY J. TKACHIK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1308-CR-417 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-0906-MR-6

**March 3, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

On June 26, 2009, Appellant-Defendant Timothy J. Tkachik and Engelica Castillo were charged with one count of murder, two counts of Class A felony neglect of a dependent, Class A felony battery, and Class A misdemeanor false informing. Tkachik pled guilty to two counts of Class A felony neglect of a dependent. In exchange for Tkachik's guilty plea, Appellee-Plaintiff the State of Indiana agreed to dismiss the charges alleging that Tkachik committed murder, Class A felony battery, and Class A misdemeanor false informing. Pursuant to the terms of Tkachik's plea agreement, sentencing was left to the discretion of the trial court. The trial court subsequently sentenced Tkachik to concurrent terms of forty years. On appeal, Tkachik contends that the trial court abused its discretion in sentencing him. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts and circumstances of this case, which were set out by the Indiana Supreme Court in Castillo's direct appeal, are as follows:

> The dead body of two-year-old [J.J.] was recovered from a swampy body of water near LaPorte, Indiana, on June 24, 2009. At the time of her death, [J.J.] was staying with her mother's first cousin, Engelica Castillo, and Castillo's then-boyfriend, Timothy J. Tkachik.
>
> ****
>
> [J.J.] was scheduled to stay there from June 8 through June 21 of 2009. The first few days of [J.J.]'s visit were relatively unremarkable. On the morning of June 12, [Castillo and Tkachik] discovered that [J.J.] had taken a packet of powdered Hawaiian Punch mix and strawberries out of their refrigerator without asking their permission. [Castillo] responded by yelling at and spanking the victim and then wrapping twine around the refrigerator later in the day. [Tkachik], who was present during nearly all of the events in question, testified that the rest of that day was uneventful. The next morning, on June 13, [Castillo] discovered that [J.J.] had locked herself in her bedroom.

2

After unlocking the door, [Castillo] found that [J.J.] had made a mess on the bedroom floor with syrup and powdered Hawaiian Punch packets that [J.J.] had found in the kitchen. Again, [Castillo] yelled at and spanked [J.J.] and then cleaned up the mess, pushing [J.J.] aside roughly as she cleaned.

Later in the day, around lunchtime, [Castillo] gave [J.J.] a pre-packaged lunch to eat. [J.J.] did not eat much of it, mostly playing with the food and throwing pieces of it to the dog. This made [Castillo] angry. As punishment, [Castillo] put [J.J.] in a corner in [J.J.]'s bedroom and then, after cleaning the mess in the kitchen, sat on the couch with [Tkachik] in the living room. [Castillo] could see [J.J.] in her bedroom from the couch and, soon after sitting, noticed that [J.J.] was no longer standing but instead sitting down in the corner and playing with toys. [Castillo] then returned to the bedroom, spanked [J.J.], and attempted to force her to stand upright by yanking her and holding her upright by her arms. [Castillo] then went back to the living room and again sat on the couch. Approximately five minutes later, [Castillo] again became irritated with [J.J.] and returned to the bedroom. The facts are not clear as to what exactly occurred during this confrontation, but [Tkachik] testified that he could hear [Castillo] speaking in an irritated tone to [J.J.] when the door was closed and that, at one point when the door was open, he saw [Castillo] holding [J.J.] by the hair, poking her in the body, and slapping her. At one point during this confrontation, [Castillo] brought [J.J.] into the living room and, with [Tkachik]'s help, spanked [J.J.] several times on her bare bottom using a belt. Approximately one and one-half hours after this confrontation began, [Castillo] came out of [J.J.]'s bedroom and told [Tkachik] that [J.J.] had hit her head on a table in the bedroom when [Castillo] had slapped her. [Tkachik] testified that [J.J.] sustained a small cut above her right eye that bled only a small amount and that [Castillo] put a small bandage over it. He also testified that he noticed red marks on [J.J.]'s face and bruises on her buttocks around that same time.

Shortly after [J.J.] hit her head, [Tkachik] became frustrated by the ongoing confrontation between [J.J.] and [Castillo]. He ran into [J.J.]'s bedroom and "knuckled" [J.J.] in the head "pretty hard" four to six times "hoping that everything would stop after that." Tr. at 334-35. Afterward, [Castillo] continued to hold [J.J.] by the hair, yanking and pushing her, and eventually tied [J.J.] to a chair with [Tkachik]'s belts. She initially placed one belt around [J.J.]'s waist and another around her neck but removed the belt from around [J.J.]'s neck after [Tkachik] told her to do so. Still frustrated with the situation, [Tkachik] then went to the gas station. When he arrived home, he heard "boom, boom, boom, boom" coming from [J.J.]'s bedroom, but he couldn't see what was causing the noise because the bedroom door was shut. Tr. at 341. He then made plans to go to Chicago that evening to purchase heroin.

3

Approximately thirty minutes later, [Castillo] and [Tkachik] left for Chicago to retrieve the heroin. [Tkachik] testified that, while they were getting [J.J.] ready to leave, he noticed that [J.J.] had a bruise on her face, that she seemed "out of it," and that she was unable to hold her bottle while sitting in her carseat. Tr. at 344. [Castillo] wrapped [J.J.] in a blanket to hide the marks on her body because they were going to take a friend with them to Chicago. Shortly after leaving the house, while driving on Interstate 94, [Tkachik] noticed that [J.J.]'s head was leaning down towards her chest with her eyes closed. He then jumped in the back seat, found that she was not breathing, and attempted to administer CPR as [Castillo] pulled off the road. At that point, [Castillo] and [Tkachik] switched places, and [Castillo] continued CPR while [Tkachik] drove the truck back to their house. Once they arrived home, they stopped administering CPR and left [J.J.] in the backseat of the truck covered with a tarp. Sometime later, they set off for Chicago again, without [J.J.]. The precise timing of [J.J.]'s death is unclear, but both [Castillo] and [Tkachik] testified that she was dead when they returned from Chicago later that night.

*Castillo v. State*, 974 N.E.2d 458, 461, 463-65 (Ind. 2012). After Tkachik and Castillo returned from Chicago, they put J.J.'s body into garbage bags and left her in the basement while they consumed drugs.

The next day, realizing that they needed to get rid of the body, Tkachik and Castillo purchased gasoline, charcoal, and lighter fluid and drove out to a wooded area. Tkachik and Castillo placed J.J.'s body into a hole in the ground and attempted to burn it. Their attempt to burn J.J.'s body was unsuccessful and Tkachik was severely burned in the process. Tkachik and Castillo then left J.J.'s body in the hole and returned home.

The next day, Tkachik and Castillo went to retrieve the body after purchasing concrete, a rope, a dolly, and a large bucket. Tkachik and Castillo tied J.J.'s body so that it would fit in the container that they purchased, poured concrete over J.J.'s body, and waited for the concrete to dry. In the early morning hours, Tkachik and Castillo returned to the

4

wooded area and dumped J.J.'s body into a swamp. Tkachik and Castillo later lied to police, claiming that J.J. had been kidnapped when Castillo left J.J. in the car when she went to purchase something from a gas station. At some later time, Tkachik informed police about what had happened to J.J. and led police to where he and Castillo had left J.J.'s body.

On June 26, 2009, Tkachik and Castillo were charged with one count of murder, two counts of Class A felony neglect of a dependent, one count of Class A felony battery, and one count of Class A misdemeanor false informing. Tkachik pled guilty to two counts of Class A felony neglect of a dependent. In exchange for Tkachik's guilty plea, the State agreed to dismiss charges alleging that Tkachik committed murder, Class A felony battery, and Class A misdemeanor false informing.

In pleading guilty, Tkachik admitted that he and Castillo acted in concert with each other in beating J.J., he delivered "several blows to the head" of J.J., and he held J.J. down while Castillo repeated struck her with a belt. Appellant's App. p. 80. Tkachik further admitted that although he recognized the "dire circumstances faced by [J.J.]" as well as her "immediate need for prompt medical attention," he did not seek medical attention for J.J. but rather left her body in the backseat of a vehicle while he and Castillo took a different vehicle into Chicago to buy drugs. Appellant's App. p. 80. He also acknowledged that J.J. died as a result of the beating inflicted upon her by him and Castillo.

Pursuant to the terms of Tkachik's plea agreement, Tkachik agreed to testify against Castillo and sentencing was left to the discretion of the trial court. The trial court accepted Tkachik's guilty plea and sentenced Tkachik to two concurrent forty-year terms of

5

incarceration. This appeal follows.

## DISCUSSION AND DECISION

Tkachik challenges his sentencing on appeal. In doing so, Stachik acknowledges the "abhorrent" nature of his actions but nevertheless contends that the trial court abused its discretion in sentencing him. Appellant's Br. p. 6. Sentencing decisions rest within the sound discretion of the trial court and are reviewed on appeal only for an abuse of discretion. *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *modified on other grounds on reh'g*, 875 N.E.2d 218 (Ind. 2007). "An abuse of discretion occurs if the decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id*. (quotation omitted). When imposing a sentence in a felony case, the trial court must provide a reasonably detailed sentencing statement explaining its reason for imposing the sentence. *Id*.

> One way in which a trial court may abuse its discretion is failing to enter a sentencing statement at all. Other examples include entering a sentencing statement that explains reasons for imposing a sentence-including a finding of aggravating and mitigating factors if any-but the record does not support the reasons, or the sentencing statement omits reasons that are clearly supported by the record and advanced for consideration, or the reasons given are improper as a matter of law. Under those circumstances, remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.

*Id*. at 490-91.

In sentencing Tkachik, the trial court found the following aggravating factors: (1) Tkachik's criminal history, which included prior misdemeanor convictions; (2) prior leniency

6

did not deter future criminal behavior; (3) at the time of J.J.'s death, Tkachik was involved in drug dealing; (4) Tkachik is in need of correctional and rehabilitative treatment that can be best provided by his commitment to a penal facility; and (5) Tkachik "knuckled" J.J. in the head "pretty hard" four to seven times. Tr. p. 74; Appellant's App. p. 132. The trial court also found the following mitigating factors: (1) Tkachik pled guilty; (2) Tkachik expressed remorse; (3) Tkachik testified against Castillo; (4) Trachik essentially confessed and led law enforcement to J.J.'s body; and (5) the devastating and traumatic effect of the murder-suicide situation involving his parents when Tkachik was seventeen. After considering each of these factors, the trial court imposed two concurrent forty-year terms of imprisonment.

On appeal, Tkachik does not challenge the aggravating factors considered by the trial court. Tkachik recognizes that the trial court considered the above-stated mitigating factors when sentencing him but argues that the trial court failed to consider as additional mitigating factors the accidental nature of J.J.'s death, the fact that Castillo was the controlling party in their relationship, and the fact that Tkachik's addiction to heroin contributed to his actions.

Although a sentencing court must consider all evidence of mitigating factors offered by a defendant, the finding of mitigating factors rests within the court's discretion. *Henderson v. State*, 769 N.E.2d 172, 179 (Ind. 2002). "A court does not err in failing to find mitigation when a mitigation claim is highly disputable in nature, weight, or significance." *Id*. (internal quotations omitted). The trial court is not obligated to explain why it did not find a factor to be significantly mitigating. *Sherwood v. State*, 749 N.E.2d 36, 38 (Ind. 2001) (citing *Birdsong v. State*, 685 N.E.2d 42, 47 (Ind. 1997)). Furthermore, while Indiana law

7

mandates that the trial judge not ignore facts in the record that would mitigate an offense, and a failure to find mitigating factors that are clearly supported by the record may imply that the trial court failed to properly consider them, *id.*, an allegation that the trial court failed to find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Carter v. State*, 711 N.E.2d 835, 838 (Ind. 1999).

### A. Accidental Nature of J.J.'s Death

Tkachik claims that the trial court should have considered the accidental nature of J.J.'s death to be a mitigating factor. Tkachik, however, did not raise this claim before the trial court. "'A defendant who fails to raise proposed mitigators at the trial court level is precluded from advancing them for the first time on appeal.'" *Johnson v. State*, 837 N.E.2d 209, 215 (Ind. Ct. App. 2005) (quoting *Pennington v. State*, 821 N.E.2d 899, 905 (Ind. Ct. App. 2005)). Therefore, Tkachik has waived this claim on appeal.

### B. Castillo Dominant Party in Relationship

Tkachik also claims that the trial court should have considered the fact that Castillo was the dominant party in his relationship with Castillo. Again, the finding of mitigating factors is within the discretion of the trial court, and the trial court is not obligated to accept the defendant's contentions as to what constitutes a significant mitigating factor. *McCann v. State*, 749 N.E.2d 1116, 1121 (Ind. 2001) (citing *Legue v. State*, 688 N.E.2d 408, 411 (Ind. 1997)). "'An allegation that the trial court failed to identify or find a mitigating [factor] requires the defendant to establish that the mitigating evidence is both significant and clearly

8

supported by the record.'" *Id.* (citing *Carter*, 711 N.E.2d at 838). Tkachik has failed to do so.

While it may be true that Castillo was the dominant individual in the relationship between Tkachik and Castillo, the record contains a great deal of evidence demonstrating that Tkachik played a significant role in the actions that led to J.J.'s death. Tkachik admitted that he and Castillo acted in concert with each other in beating J.J., he delivered "several blows to the head" of J.J., and he held J.J. down while Castillo repeated struck J.J. with a belt. Appellant's App. p. 80. Tkachik further admitted that although he recognized the "dire circumstances faced by [J.J.]" as well as her "immediate need for prompt medical attention," he did not seek medical attention for J.J. but rather left her body in the backseat of a vehicle while he and Castillo took a different vehicle into Chicago to buy drugs. Appellant's App. p. 80. Furthermore, Tkachik did not argue that Castillo forced him to participate in the actions that led to J.J.'s death. In light of this evidence, the trial court appeared to be unconvinced that Castillo's alleged dominance over Tkachik amounted to a significant mitigating factor. The trial court did not abuse its discretion in this regard.

### C.  Tkachik's Drug Use

Tkachik also claims that the trial court abused its discretion in failing to find as a mitigating factor that his drug abuse contributed to his actions. Again, the trial court is not obligated to accept the defendant's contentions as to what constitutes a significant mitigating factor, and an allegation that the trial court failed to identify or find a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly

9

supported by the record. *McCann*, 749 N.E.2d at 1121 (citing *Carter*, 711 N.E.2d at 838). In addition, we note that the Indiana Supreme Court has held that a trial court is not required to consider a defendant's substance abuse to be a mitigating factor. *See James v. State*, 643 N.E.2d 321, 323 (Ind. 1994).

We note that Tkachik fails to make any specific argument relating to why he believes that the trial court abused its discretion in failing to find the fact that his heroin use contributed to his actions to be a mitigating factor. Tkachik merely raises this claim without any explanation as to why his heroin use was significant enough to warrant mitigating weight. As such, Tkachik has waived this claim on appeal. *See Lyles v. State*, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005) (providing that a party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record), *trans. denied*. Furthermore, waiver notwithstanding, the record demonstrates that the trial court considered Tkachik's drug use at sentencing but apparently did not consider it to be a significant mitigating factor. The trial court did not abuse its discretion in this regard.

## CONCLUSION

Having concluded that Tkachik has waived his claim relating to the accidental nature of J.J.'s death and that the trial court did not abuse its discretion in failing to find Castillo's alleged dominant position in Tkachik's and Castillo's relationship or Tkachik's drug use to be significant mitigating factors, we conclude that the valid aggravating factors found by the trial court warranted an enhanced sentence and, accordingly, that the trial court did not abuse its discretion in sentencing Tkachik.

The judgment of the trial court is affirmed.

MATHIAS, J., and PYLE, J., concur.