## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 29 2019, 10:56 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

Meggan E. Smith
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Brandon Hicks,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent*

October 29, 2019

Court of Appeals Case No.
19A-PC-1177

Appeal from the Marion Superior Court

The Honorable Sheila A. Carlisle, Judge

Trial Court Cause No.
49G03-1509-PC-34015

**Baker, Judge.**

Brandon Hicks appeals the denial of his petition for post-conviction relief, arguing that the post-conviction court erroneously determined that he did not receive the ineffective assistance of appellate counsel. Finding no error, we affirm.

## Facts

The underlying facts, as described by this Court in Hicks's direct appeal, are as follows:

> During the evening of September 22, 2012, Hicks was at Bubba's Bar & Grill (Bubba's) in Indianapolis, Indiana, with friends. On that night, Josh Bolin (Bolin) was bartending at the bar. According to Hicks, he and Bolin had known each other for a few years through their mutual work as drug dealers. After exchanging pleasantries, Bolin invited Hicks to an after-party at his house and explained that there would be high-end marijuana there. In response, Hicks stated that he had his own marijuana. This led to Bolin "sucker-punch[ing]" Hicks in his "mouth and nose area." Hicks then "pulled himself back up to the bar, and [Bolin] hit [him] again and knocked [him] down to the ground." After the altercation, Hicks sat in the parking lot outside of Bubba's and called the police. . . . There was no follow-up conversation with the police about this altercation, and no arrests were made.
>
> On November 12, 2012, at approximately 10:30PM, Hicks and his friends, Graham Girgenti (Girgenti) and Misty Girgenti (Misty), went to Krazy Street Bar & Grill (the Bar) in Indianapolis, Indiana, to watch Monday Night Football. There were about thirty to thirty-five people at the bar. Shortly after their arrival, Hicks saw Bolin enter the Bar with friends. According to Hicks, he became afraid when he saw Bolin come in, so he called his brother, Ronald Hicks (Ronald), to inform

him that Bolin was there. Ronald told Hicks that he was on his way to pick him up.

Soon after Hicks finished talking to his brother, Bolin approached him. Hicks stood up and words were exchanged, but no one else could hear what they were saying because of the noise in the bar. Hicks testified that Bolin told him, "Motherfucker, I will kill you." There was no yelling, but the two men were only one foot away from each other. Shortly thereafter, Bolin punched Hicks in the face. The punch caused Hicks to fall back slightly, and he reached for his .40 Smith and Wesson semi-automatic handgun that was concealed in an inner holster inside his pants. Hicks pointed the gun at Bolin and fired. Hicks testified that he and Bolin struggled for the gun after the first shot. Hicks was able to free himself by firing two additional shots at Bolin. In total, Hicks shot Bolin three times. . . .

. . . Bolin died at the scene as a result of the gunshot wounds.

*Hicks v. State*, No. 49A02-1308-CR-739, at *1-2 (Ind. Ct. App. July 15, 2014) (internal citations omitted). On November 15, 2012, the State charged Hicks with Class A felony murder and Class A misdemeanor possession of marijuana.

Hicks's jury trial took place on July 23-24, 2013. Hicks's primary theory of the case was that he acted in self-defense. The jury instruction on self-defense read as follows:

It is an issue whether the Defendant acted in self-defense.

A person may use reasonable force against another person to protect himself from what the defendant reasonably believes to be the imminent use of unlawful force. A person is justified in using

deadly force, and does not have a duty to retreat, only if he reasonably believes that deadly force is necessary to prevent serious bodily injury to himself or a third person or to prevent the commission of a forcible felony. However, a person may not use force if:

- He is committing a crime that is directly and immediately connected to the confrontation;
- He is escaping after the commission of a crime that is directly and immediately connected to the confrontation;
- He provokes a fight with another person, with intent to cause bodily injury to that other person; or
- He has willingly entered into a fight with another person or started the fight, unless he withdraws from the fight and communicates to the other person his intent to withdraw and the other person nevertheless continues or threatens to continue the fight.

The State has the burden of proving beyond a reasonable doubt that the Defendant did not act in self-defense.

PCR Tr. Ex. 6. And the jury was instructed on murder and its lesser-included offenses as follows:

The crime of Murder is defined by law as follows:

A person who knowingly or intentionally kills another human being, commits Murder, a Felony.

Included in the charge in this case is the crime of Voluntary Manslaughter, which is defined by law as follows:

A person who knowingly or intentionally kills another human being while acting under sudden heat commits Voluntary

Manslaughter, a Class B Felony. The offense is a Class A Felony if it is committed by means of a deadly weapon.

Sudden heat is a mitigating factor that reduces what otherwise would be murder to voluntary manslaughter. The State has the burden of proving beyond a reasonable doubt that the Defendant was not acting under sudden heat.

Before you may convict the Defendant, the State must have proven each of the following beyond a reasonable doubt:

1. The Defendant, Brandon Hicks

2. Knowingly

3. Killed

4. Another human being, namely: Joshua Bolin

5. And the Defendant was not acting under sudden heat

6. And the Defendant killed by means of a deadly weapon, that is: a handgun

If the State failed to prove each of these elements 1 through 4 beyond a reasonable doubt, you must find the Defendant not guilty of Murder as charged in Count I.

If the State did prove each of these elements 1 through 4 and element 6 beyond a reasonable doubt, but the State failed to prove beyond a reasonable doubt element 5, you may find the Defendant guilty of Voluntary Manslaughter, a Class A Felony, a lesser included offense of Count I.

If the State did prove each of these elements 1 through 5 beyond a reasonable doubt, you may find the Defendant guilty of Murder, a Felony as charged in Count I.

If you find the Defendant did not commit Murder or Voluntary Manslaughter, you may consider whether or not the Defendant committed Reckless Homicide, a Class C Felony.

The Crime of Reckless Homicide is defined by law as follows:

A person who recklessly kills another human being commits Reckless Homicide, a Class C Felony.

Before you may convict the Defendant, the State must have proved each of the following elements:

1.  The Defendant, Brandon Hicks

2.  Recklessly

3.  Killed

4.  Another human being, namely: Joshua Bolin

If the State failed to prove each of the following [sic] elements beyond a reasonable doubt, you must find the Defendant not guilty of Reckless Homicide a Class C Felony as included in Count I.

*Id.* Hicks's trial counsel did not object to these jury instructions.

[4] The jury found Hicks not guilty of murder but guilty of voluntary manslaughter and possession of marijuana, and on August 7, 2013, the trial court sentenced Hicks to an aggregate term of forty years imprisonment. Hicks filed a direct appeal. Appellate counsel raised the following arguments: (1) the trial court erred in sentencing Hicks; and (2) trial counsel was ineffective for multiple reasons. Appellate counsel did not raise the jury instructions, either as a stand-alone issue or in the context of ineffective assistance of trial counsel.

[5] This Court affirmed. Relevant to this appeal is appellate counsel's contention that trial counsel was ineffective for failing to argue the elements of self-defense in a diligent manner. We disagreed, focusing on the evidence in the record related to self-defense:

> The State had the burden of rebutting at least one element of self-defense. A review of the State's evidence shows that Bolin was unarmed and attacked Hicks by punching him with his fist. The State's primary argument was that Hicks' use of a gun to defend himself against Bolin, who was unarmed, was excessive and thus unreasonable. The self-defense statute requires that the force used to protect oneself is reasonable and "the [jury] is not precluded from finding that a defendant used unreasonable force simply because the victim was the initial aggressor." *Birdsong v. State,* 685 N.E.2d 42, 45 (Ind. 1997). Hence, the State provided evidence to rebut at least one element of Hicks' self-defense claim and the jury could reasonably decide that Hicks did not act in self-defense. Because the State did not fail to rebut at least one element of self-defense at trial, trial counsel was not ineffective by not addressing it as thoroughly as Hicks wanted her to.

*Hicks*, 49A02-1308-CR-739, at *6.

On September 23, 2015, Hicks filed a pro se petition for post-conviction relief, which was later amended by counsel. Hicks argued that he received the ineffective assistance of appellate counsel based, in relevant part, on the following arguments: (1) appellate counsel should have argued that the jury instructions were fundamentally erroneous; and (2) appellate counsel should not have raised the ineffective assistance of trial counsel as part of a direct appeal. The post-conviction court held an evidentiary hearing on Hicks's petition on February 20, 2018, and denied Hicks's petition on May 1, 2019.[1] Hicks now appeals.

## Discussion and Decision

## I. Standard of Review

The general rules regarding the review of a ruling on a petition for post-conviction relief are well established:

> "The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence." *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004). "When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment." *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-

---

[1] The record does not reveal the reason for the lengthy delay between the evidentiary hearing and the post-conviction court's ruling.

conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (quotation omitted).

*Hollowell v. State*, 19 N.E.3d 263, 268-69 (Ind. 2014).

[8] Hicks's primary argument on appeal is that the post-conviction court erroneously determined that he did not receive the ineffective assistance of appellate counsel. To establish ineffective assistance of appellate counsel, the petitioner must show that (1) appellate counsel was deficient in his or her performance, *and* (2) the deficiency resulted in prejudice. *Id.* at 269. Failure to satisfy either prong will cause the claim to fail. *Henley v. State*, 881 N.E.2d 639, 644 (Ind. 2008). To satisfy the first prong, the defendant must show that counsel's representation fell below an objective standard of reasonableness, committing errors so egregious that the defendant did not have the counsel guaranteed by the Constitution. *Hollowell*, 19 N.E.3d at 269. To satisfy the second prong, the defendant must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.*

# II. Assistance of Appellate Counsel

## A. Failure to Raise Jury Instructions

[9] Hicks first argues that appellate counsel was ineffective for failing to argue, in the direct appeal, that the jury instructions were fundamentally erroneous. In considering whether appellate counsel performed deficiently by failing to raise an issue, we determine (1) whether the unraised issue is significant and obvious from the face of the record, and (2) whether the unraised issue is clearly stronger than the issues that were raised on appeal. *Bieghler v. State*, 690 N.E.2d 188, 194 (Ind. 1997). In evaluating prejudice, we examine whether the unraised issue would have been "'clearly more likely to result in reversal or an order for a new trial.'" *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 647 (7th Cir. 1986)).

[10] Hicks's trial counsel did not object to the jury instructions; consequently, appellate counsel would have had to have shown fundamental error to warrant relief on this issue. The fundamental error exception is extremely narrow and applies only to an egregious error that constitutes a blanket denial of due process, rendering a fair trial impossible. *E.g.*, *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014). To rise to the level of fundamental error, the matter must be one that the trial court had a duty to correct sua sponte. *Id.*

[11] The purpose of a jury instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly. *Buckner v. State*, 857 N.E.2d 1011, 1015 (Ind. Ct. App. 2006).

Therefore, the jury instructions are to be considered as a whole, and reversal is not appropriate unless the instructions as a whole mislead the jury. *Id.*

[12] Hicks directs our attention to the jury instruction describing the elements of murder and its lesser-included offenses. He argues that the instruction "omitted an essential element—that Hicks 'was not acting in defense of a person'—that the jury must find before finding Hicks guilty." Appellant's Br. p. 21. With this omission, Hicks insists that the roadmap omitted one path to acquittal of murder and its lesser-included offenses.

[13] Self-defense is *not* an element of the crime of murder or its lesser-included offenses. Ind. Code §§ 35-42-1-1 (murder), -3 (voluntary manslaughter), -5 (reckless homicide). Instead, it is a defense of justification, "admitting that the facts of the crime occurred but contending that the acts were justified. As such, these [justification] defenses negate no element of the crime." *Moon v. State*, 823 N.E.2d 710, 716 (Ind. Ct. App. 2005) (omitting internal citations).

[14] Although a jury must be informed of the State's burden to disprove a claim of self-defense—as it was in this case—Hicks cites to no authority holding that this burden must be included in the list of enumerated elements that the State is required to prove to convict, rather than by including that requirement in a different instruction. We can only find that because self-defense is not an element of the charged crimes, there is no requirement that it be included in the instruction describing the elements of those charges.

[15]     Hicks observes that the introduction to pattern jury instruction 10 provides that when the State has the burden of persuasion related to a defense, such as with self-defense, the following instruction should be incorporated into the instruction on the elements of the crime: "If the State failed to prove each of these elements [including the absence of self-defense] beyond a reasonable doubt, you must find the Defendant not guilty of [charged offense]." Ind. Pattern Crim. Jury Inst. 10 INTRO. It is true that in Indiana, the preferred practice is to use the pattern jury instructions. *E.g.*, *Santiago v. State*, 985 N.E.2d 760, 763 (Ind. Ct. App. 2013). But Hicks points to no authority standing for the proposition that use of the pattern instructions is *required*. Indeed, pattern jury instructions are not always upheld as correct statements of law. *E.g.*, *Harrison v. State*, 32 N.E.3d 240, 252 n.5 (Ind. Ct. App. 2015); *Albores v. State*, 987 N.E.2d 98, 102 (Ind. Ct. App. 2013). Therefore, the mere fact that the jury instruction at issue here did not wholly mimic the pattern jury instruction is insufficient to show fundamental error.

[16]     As noted above, jury instructions are not viewed in isolation; they are viewed as a whole and in reference to each other. *McDowell v. State*, 102 N.E.3d 924, 935-37 (Ind. Ct. App. 2018) (holding that although voluntary manslaughter instruction was worded incorrectly, instructions as a whole properly instructed the jury on the law regarding voluntary manslaughter), *trans. denied.* Moreover, the jury was specifically instructed to consider the instructions as a whole and construe every instruction "in connection with, and in light of, every other instruction given." PCR Tr. Ex. 6. Defense counsel told the jury that the

instructions on murder and self-defense "fit together" and should be considered in tandem. Trial Tr. Vol. II p. 414.

[17] Hicks finds no fault with the jury instruction on self-defense. Indeed, the instruction informed the jury that people may use force to protect themselves when certain circumstances exist and that the State had to prove beyond a reasonable doubt that Hicks had not acted in self-defense in this case. PCR Tr. Ex. 6. When the instructions are viewed as a whole, therefore, we can only find that reasonable jurors would have understood that if Hicks had a valid claim of self-defense that was not disproved by the State, he was not guilty of a criminal offense. Therefore, even if it may have been better to have included the State's burden regarding self-defense in the instruction on the elements of the charged offenses, any deficiency was cured by the self-defense instruction.

[18] Hicks first responds that during closing arguments, both trial counsel and the prosecutor told the jury that self-defense was a defense to *murder*, but did not further explain that it is also a defense to the lesser-included offenses. Second, he notes that, while the self-defense instruction explains that the State must prove beyond a reasonable doubt that Hicks did not act in self-defense, the instructions did not tell the jury what to do (i.e., acquit) if it found that the State failed to meet that burden.

[19] We do not find these arguments persuasive. We decline to operate from the premise that Indiana jurors are unintelligent. During Hicks's trial, the attorneys' arguments were focused on murder because that was the lead charge;

but neither the arguments nor the jury instructions suggested that Hicks's claim of self-defense did not apply to the lesser-included offenses. Indeed, the self-defense instruction stated that a person is justified in using "deadly force," not that he is not guilty of "murder," when it is necessary to protect him self from serious bodily injury. PCR Tr. Ex. 6. Voluntary manslaughter and reckless homicide are both examples of the use of deadly force.

[20] Moreover, we neither expect nor wish for our jurors to ignore the knowledge with which they enter the courtroom. Instead, we instruct them to use that knowledge. *E.g.*, *Buckner*, 857 N.E.2d at 1016. Reasonable jurors would know that the right of self-defense is not limited to murder and would understand that self-defense applies equally to other forms of homicide or non-homicide charges. Reasonable jurors would also know that if the State failed to prove beyond a reasonable doubt that Hicks did not act in self-defense, they would have to acquit Hicks. Therefore, there is no basis for concluding that the jury might have believed that (1) self-defense was not a defense to the lesser-included charges, or (2) it could convict even if the State failed to meet its burden with respect to the self-defense claim. Under these circumstances, appellate counsel could not have established fundamental error based on the jury instructions.

[21] In sum, we find that Hicks's argument regarding jury instructions was neither significant and obvious from the face of the record nor clearly stronger than the

issues raised by appellate counsel in the direct appeal. Moreover, the issue would not likely have resulted in a reversal or a new trial.[2]

## B. Decision to Argue Assistance of Trial Counsel

[22] Hicks also argues that appellate counsel was ineffective because she raised the issue of the effectiveness of trial counsel in Hicks's direct appeal. The State concedes that "as a general rule, the better practice is to wait to raise [ineffective assistance of counsel] claims on post-conviction." Appellee's Br. p. 27. We agree, given that if a defendant raises a claim of ineffective assistance of counsel on direct appeal, he is procedurally barred from raising the claim again on post-conviction. *E.g.*, *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind. 1998).

[23] For argument's sake, we will assume that it was deficient performance in this case for appellate counsel to have raised ineffective assistance of trial counsel claims in Hicks's direct appeal. That does not end our inquiry, however, as Hicks must still prove that he was prejudiced by that decision. In other words, he must show that he has a meritorious ineffective assistance of trial counsel claim that he could have raised on post-conviction but for the procedural bar created by the direct appeal. *Ben-Yisrayl*, 738 N.E.2d at 261-62.

---

[2] Hicks's appellate counsel did not testify at the post-conviction hearing. The post-conviction court inferred from counsel's absence that, had she been present to testify, she would not have corroborated the claims of ineffectiveness. Appealed Order p. 16. Hicks argues that this inference is inappropriate because he tried on multiple occasions to secure her presence at the hearing, but she did not respond to his mailings. The post-conviction court also noted that the inference was not dispositive, and its ruling would have been the same without it. We, likewise, do not rely on any such inference in reaching our result, and decline to consider Hicks's argument that the post-conviction court erred on this basis.

[24] The only purported meritorious ineffective assistance of trial counsel claim advanced by Hicks is trial counsel's failure to object to the allegedly incomplete elements instruction and/or tender an instruction that included the "element" that Hicks maintains was omitted from the elements instruction. For the reasons discussed above, trial counsel was not deficient for failing to make this objection or tender this instruction, and Hicks was not prejudiced by the lack of an objection. Had trial counsel made such an objection, it would not have been sustained because the jury instructions as a whole were sufficient. *E.g.*, *Curtis v. State*, 905 N.E.2d 410, 418 (Ind. Ct. App. 2009) (holding that to demonstrate deficient performance for failing to object, a petitioner must show that the trial court would have had no choice but to sustain the objection, had it been made). Therefore, even if the instruction issue had been preserved for post-conviction proceedings, there is no reasonable probability that raising the issue would have resulted in a different outcome.

[25] Finally, we note that this Court found on direct appeal that the State had, in fact, disproved the claim of self-defense beyond a reasonable doubt because Hicks used objectively unreasonable force under the circumstances. *Hicks*, No. 49A02-1308-CR-739, at *6. He shot an unarmed man multiple times in response to a single punch thrown that did not inflict any visible injury, much less any serious injury. *Id.* at *3 (noting that Hicks's "use of a deadly weapon in response to a punch was excessive, and there were many options that were available to him to avoid an altercation"). Because the evidence proved that

Hicks's conduct was not a justified act of self-defense, he cannot have been prejudiced by any inadequacy in the jury instructions regarding self-defense.

[26] In sum, while it may have been inadvisable for appellate counsel to have raised ineffective assistance of trial counsel in Hicks's direct appeal, he has not and cannot show prejudice as a result of that decision. Therefore, the post-conviction court did not err by denying his claim on this basis.

[27] The judgment of the post-conviction court is affirmed.

Kirsch, J., and Crone, J., concur.