Terrance HOOD, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0703–CR–242.

Court of Appeals of Indiana.

Dec. 6, 2007.

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Defendant Terrance Hood ("Hood") appeals his conviction for Voluntary Manslaughter.[1] We reverse and remand for retrial.[2]

### Issues

Hood presents three issues for review:

I.   Whether the trial court abused its discretion by excluding the anticipated testimony of an eyewitness as to his belief that the victim was reaching for a gun;

II.  Whether the State presented sufficient evidence to negate Hood's claim of self-defense; and

III. Whether Hood was properly sentenced.[3]

### Facts and Procedural History

During the evening of August 30, 2005, Hood and Michael Earls ("Earls") went to Village Liquors at 16th and Medford Streets in Indianapolis to buy beer and liquor. When Hood walked out with his beer, a vehicle driven by Eon Truth ("Truth") careened into the parking lot and narrowly missed Hood. Hood and Truth exchanged words and obscenities, and Earls urged Hood to leave. As an intoxicated Truth approached Hood, Hood reached into his minivan and retrieved a gun from between the two front seats.

Hood fired two shots, but Truth did not fall. Truth began to stagger toward the back of Hood's minivan, and Hood fired four more shots. Truth collapsed and later died after suffering massive blood loss.

Hood got into his minivan and drove away, jumping the curb to move onto 16th Street. Officer Michael Kavanaugh attempted to stop a minivan matching the description of Hood's vehicle, but the driver, later identified as Hood, refused to stop and jumped out of the minivan while it was still moving. Hood was not immediately apprehended.

On September 8, 2005, the State charged Hood with Murder[4] and Carrying a Handgun Without a License, elevated to a Class C felony because of a prior offense. He was arrested in October of 2005.

On January 30, 2007, a jury found Hood guilty of Voluntary Manslaughter[5] and determined that he was carrying a handgun without a license. Hood stipulated that he had previously been convicted of carrying a handgun without a license. On February 9, 2007, the trial court imposed upon Hood consecutive sentences of forty years and six years. This appeal ensued.

### I. Exclusion of Testimony

■ Hood contends that the trial court abused its discretion by excluding evidence corroborating his claim of self-defense. The State called Earls as a witness during

1.  Hood does not challenge his conviction for Carrying a Handgun Without a License, Indiana Code Section 35–47–2–1.

2.  Oral argument was conducted on October 31, 2007 at Vincennes University in Vincennes, Indiana. We commend counsel on the quality of their written and oral advocacy, and we thank our host, Vincennes University, for its hospitality.

3.  In light of our disposition of the other issues in this case, we will not address the sentencing issue.

4.  Ind.Code § 35–42–1–1.

5.  Ind.Code § 35–42–1–3.

its case-in-chief. Earls testified that Truth "started reaching towards his waist line" before Hood reached into the vehicle and retrieved his gun. (Tr. 153.) On cross-examination, Hood's attorney elicited testimony from Earls that Truth was drunk and "a little aggressive" as he approached Hood. (Tr. 160.) Counsel subsequently asked "Did it appear to you like he was reaching for a gun" to which the State objected on grounds of relevance. (Tr. 161.) According to the State, only Hood's subjective belief was relevant, and the trial court agreed. Hood's counsel requested permission to make an offer of proof, to which the State responded by stipulating, for purposes of an offer of proof, "that in the deposition [Earls] said he thought he was reaching for a gun ... that's what he would say." (Tr. 178.)

On appeal, Hood contends that the excluded testimony was highly probative of his self-defense claim as it shows the reasonableness of his fear of a deadly attack. He relies upon *Brand v. State*, 766 N.E.2d 772 (Ind.Ct.App.2002), *trans. denied*, to support his argument that the concept of evidentiary relevance is very broad in a self-defense case. Brand engaged in an altercation with Lickliter and shot him four times, killing him. At Brand's murder trial, the trial court excluded evidence of the decedent's gang membership, drug dealing, and offer to sell a firearm. *See id.* at 777. Brand was convicted of voluntary manslaughter and appealed. This Court recognized that "when a defendant claims that he acted in self-defense, evidence legitimately tending to support his theory is admissible" and "a defendant is entitled to support his claim of self-defense by introducing evidence of matters that would make his fear of the victim reasonable." *Id.* at 780. This Court held that the trial court committed reversible error in excluding Brand's proffered evidence of the victim's character and reputation for violence.

*See id. See also Russell v. State*, 577 N.E.2d 567, 568 (Ind.1991) (reversing a murder conviction where the trial court excluded evidence of the victim's recent release from prison and stating in relevant part, "Any fact which reasonably would place a person in fear or apprehension of death or great bodily injury is admissible.")

According to the State, *Brand* is distinguishable from the instant case in that the erroneously excluded evidence in *Brand* was probative of Brand's state of mind while here Hood sought to present evidence probative of another person's state of mind or belief. The State contends that this case presents circumstances more analogous to those in *Henderson v. State*, 455 N.E.2d 1117 (Ind.1983). In *Henderson*, our Supreme Court found that evidence that the attempted murder victim threatened the defendant's sister was properly excluded as irrelevant to the self-defense claim because "[t]he evidence showed only that the sister was frightened." *Id.* at 1120. See also *Miller v. State*, 720 N.E.2d 696, 705 (Ind.1999) (specifying that admissible facts showing fear or concern of death or bodily injury must relate to the *defendant's* fear of the victim) (emphasis in original).

■ More recently, our Supreme Court has clarified that the phrase "reasonably believes," as used in the Indiana self-defense statute, requires both subjective belief that force was necessary to prevent serious bodily injury, and that such actual belief was one that a reasonable person would have under the circumstances. *Littler v. State*, 871 N.E.2d 276, 279 (Ind. 2007). Thus, both objective and subjective standards are implicated; a defendant claiming self-defense is not necessarily restricted to producing evidence of his own state of mind or belief. It is ultimately the

defendant's belief that is at issue; however, the beliefs of others may shed light upon the reasonableness of the defendant's belief. Here, Earls and Hood simultaneously observed Truth's conduct. Earls' perception of an imminent threat is corroborative of Hood's perception of an imminent threat and is relevant to a determination of objective reasonableness.

■ Nevertheless, the State contends that, even if Earls' proffered testimony was erroneously excluded, such exclusion is harmless error. In *Littler v. State*, 858 N.E.2d 697 (Ind.Ct.App.2006), the defendant, who was convicted of murdering his twin brother, challenged the trial court's exclusion of their mother's testimony regarding the victim's prior conduct and this Court found the exclusion to be harmless error as it was cumulative of the defendant's own testimony. On transfer, our Supreme Court disagreed that the exclusion of the mother's testimony was harmless. *Littler*, 871 N.E.2d at 279. The Court stated in relevant part:

> The mother's testimony confirming Neal's numerous prior stabbings, his mental condition, and his history of violent behavior would be very probative and relevant to the jury's evaluation of the objective reasonableness of Philip's belief that he needed to use force against Neal and would also lend substantial credibility to Philip's assertions. We cannot conclude that the exclusion of the mother's testimony did not affect Philip's substantial rights. The harmless error doctrine does not apply here.

*Id.* Here, it is likewise apparent that Earls' testimony would lend substantial credibility to Hood's assertions. Moreover, we do not find the fact that six shots were fired to be dispositive of a harmless error claim, in light of our Supreme Court's observation in *Littler*: "The extent of Neal's injuries does not necessarily disprove Philip's

claim of self defense." *Littler*, 871 N.E.2d at 279. We decline the State's invitation to apply the harmless error doctrine here. Hood's conviction for Voluntary Manslaughter must be reversed.

*II. Sufficiency of the Evidence*

■ When a new trial is required because of trial error, and a defendant presents a claim of insufficient evidence, an acquittal instead of a new trial will be required if the proof of the defendant's guilt is insufficient in light of the evidence that was actually presented at trial. *Id.* at 279–280. Accordingly, we must address Hood's claim of insufficient evidence in order to determine whether retrial is permissible. Hood contends that the State produced insufficient evidence to negate his claim of self-defense.

In order to support a conviction for Voluntary Manslaughter, the State was required to prove that Hood knowingly or intentionally killed Truth while acting in sudden heat. Ind.Code § 35–42–1–3. The offense is a Class A felony if it is committed by means of a deadly weapon. *See id.*

■ A valid claim of self-defense is legal justification for an otherwise criminal act. *Birdsong v. State*, 685 N.E.2d 42, 45 (Ind.1997). The defense is defined in Indiana Code Section 35–41–3–2(a):

> A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> (1) is justified in using deadly force; and
>
> (2) does not have a duty to retreat;
>
> if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible

felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

When a defendant raises a claim of self-defense, he is required to show three facts: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or serious bodily harm. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind.2000). Once a defendant claims self-defense, the State bears the burden of disproving at least one of these elements beyond a reasonable doubt for the defendant's claim to fail. *Miller*, 720 N.E.2d at 700. The State may meet this burden by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief. *Id.* Whether the State has met its burden is a question of fact for the factfinder. *Id.* The trier of fact is not precluded from finding that a defendant used unreasonable force simply because the victim was the initial aggressor. *Birdsong*, 685 N.E.2d at 45.

■ The standard on appellate review of a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Wallace*, 725 N.E.2d at 840. We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, then the verdict will not be disturbed. *Id.*

Hood testified that Truth approached him and cut off his exit. Truth was angry and cursing and held his hand toward his waistband. According to Hood's testimony, after Truth said "I got something for your ass," he moved his arm. (Tr. 272.) Hood then reached into his vehicle and retrieved a gun. Hood fired toward the ground, but Truth "lunged forward" and Hood then fired an additional three shots. (Tr. 273.) Earls' testimony indicated that Truth was drunk, aggressive, and making movements toward his waist. A toxicology screen revealed that Truth was under the influence of marijuana and his blood alcohol content was 0.254%.

The State essentially relied upon evidence that Hood used excessive force even if Truth was the initial aggressor. Truth had six separate gunshot wounds. Liquor store manager Andre Johnson estimated that less than thirty or forty seconds elapsed between the time he bagged Hood's beer and he heard shots and saw "muzzle flashes." (Tr. 40.) Johnson described Truth as "staggering back towards the back of the van trying to get away from the shots" while Hood kept shooting until Truth fell. (Tr. 45.)

■ Dr. Stephen Radentz, who performed the autopsy on Truth's body, offered the following opinion of the position of the body during the shooting:

I believe he was ducking and dodging and running trying to get away. The bullets were coming from just about every possible direction and striking him in various portions of his torso, his arms, and his right leg, and again they're back to front, front to back, left to right, right to left indicating most likely he was either turning completely or turning very radically side to side when he was being fired upon.

(Tr. 200–01.) Firing multiple shots undercuts a claim of self-defense. *Randolph v. State*, 755 N.E.2d 572, 575 (Ind.2001). Accordingly, there is sufficient evidence to support the Voluntary Manslaughter conviction and Hood may be retried on that charge.

## Conclusion

Hood's conviction for Voluntary Manslaughter must be reversed because evidence corroborative of his self-defense claim was erroneously excluded. However, there is sufficient evidence to permit his retrial on that charge. Because of the necessity of the reversal and retrial, we do not reach Hood's claim of sentencing error.

Reversed and remanded for retrial.

DARDEN, J., and ROBB, J., concur.