Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



**FILED**

Jul 18 2013, 6:32 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIC K. KOSELKE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**GEORGE P. SHERMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES F. NOEL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1212-CR-1005 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Robert Altice, Judge
The Honorable Patricia Gifford, Senior Judge
Cause No. 49G02-1203-FA-16900

**July 18, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

James Noel ("Noel") appeals his conviction in Marion Superior Court for Class A felony attempted murder. Noel claims that the State failed to present sufficient evidence to rebut his claim of self-defense. We disagree and affirm.

**Facts and Procedural History**

Patricia Johnson ("Patricia") and her daughter, Jackie Bundy ("Jackie") lived with Jackie's three children on Arsenal Avenue in Indianapolis. Their friends often stopped by, including Jackie's former fiancé, Paul Parks ("Parks"), and Noel. Both Noel and Parks were close friends with Jackie, having each had a romantic relationship with her in the past. Parks was also close with Jackie's family. During the course of Noel and Parks's mutual friendships with Jackie, Parks obtained $150 worth of Vicodin from Noel, but failed to pay his debt to Noel for two years.

Eventually, Noel became angry that Parks had not paid him. Noel began to threaten Parks, indicating that he would "beat [Parks's] ass" and that he was "going to get" Parks. Tr. pp. 42, 127. Additionally, Noel spoke with Parks on the phone a number of times, and tended to be aggressive and derogatory, saying, "Bitch, do you got my money?" and "You got my money? I want my money. I'll show you how we do it in Memphis."[1] Tr. pp. 41-42. In late 2011, when Patricia became aware of Noel's threats to Parks, she informed Noel that he was no longer welcome at her home. Noel knew that Parks continued his close friendship with Patricia's family, and despite Patricia's admonishment to stay away, Noel asked Patricia's neighbor, George Gates ("Gates") to inform him if he saw Parks's vehicle in the area.

---

[1] Noel is originally from Memphis, Tennessee. Tr. p. 243.

On March 11, 2012, Parks and his friend, Jeremy Green ("Green"), visited Patricia's home. After recognizing Parks's SUV, Gates called Noel to inform him that Parks was at Patricia's home. Noel, who was at his own home watching a movie with Jackie and Torrance Williams ("Williams"), left with them to find Parks. Parks had been at Patricia's home for around an hour and a half when Noel, Jackie, and Williams arrived. Noel went to the door and knocked. Upon hearing that Noel was there, Parks and Green prepared to leave the home, and saw Noel upon exiting. The men all went to the public sidewalk, where an altercation between Parks and Noel ensued.[2]

Seeing Noel with his hand behind his back, and not knowing whether Noel was armed, Parks drew a box knife from his pocket and held it at his side. Noel said something to the effect of, "Gotcha, bitch," and told Parks, "I'm going to cut your f***ing head off." Tr. pp. 53, 158. Noel stepped in front of Parks and drew a hatchet from his back pocket. Noel then struck Parks with the hatchet twice, claiming that he believed that Parks was trying to "gut" him with the box knife. Tr. p. 262. Although Parks attempted to block Noel's blows with his arm, he was struck twice in the back of the head and neck with the hatchet. Parks began staggering and was bleeding profusely when Noel pulled back his arm to strike again. Patricia yelled for Noel to stop, and Green stepped in to attempt to gain control of the hatchet. All three men fell to the ground before Green was able to wrest the hatchet from Noel's grip and throw it into the front yard of the home.

---

[2] Parks was forty-four years old, five feet, four inches tall and between 125 and 140 pounds at the time of the altercation; Noel was sixty-one years old, six feet, one inch tall, and between 180 and 190 pounds.

Meanwhile, Patricia and an anonymous caller each notified police of the ensuing struggle. As police arrived, Noel fled, and Parks was then taken by ambulance to seek medical care. In addition to the large and deep lacerations to the back of his head and neck from the hatchet, Parks suffered a variety of other bruises and contusions. The following day, Noel contacted Parks by telephone to ask Parks if he had Noel's watch, which he had lost during the altercation. Noel also told Parks that he had tried to chop Parks's head off.

On March 13, 2012, Noel was arrested and charged with one count of Class A felony attempted murder. A jury trial was held on September 4 and 5, 2012, which concluded in a hung jury and a mistrial.[3] On November 19, 2012, Noel waived his right to trial by jury and was tried again, this time in a bench trial, on November 19 and 20, 2012, and the court found Noel guilty as charged.[4] At each trial, Noel raised a claim of self-defense. Following his conviction, Noel was sentenced on November 28, 2012 to twenty-five years executed.[5] Noel now appeals.

**Discussion and Decision**

Under Indiana Code section 35-41-5-1, an attempt to commit murder is classified as a Class A felony, and a person is said to have "attempt[ed] to commit a crime when, acting with the culpability required for commission of the crime, he engage[d] in conduct that constitutes a substantial step toward commission of the crime." "A person who

---

[3] Judge Robert Altice conducted the initial jury trial.

[4] Senior Judge Patricia Gifford conducted the bench trial.

[5] Judge Altice resumed control of the case for sentencing.

knowingly or intentionally kills another human being" commits murder. Ind. Code § 35-42-1-1.[6] However, under Indiana Code section 35-41-3-2(c),

> A person is justified in using reasonable force against any other person to protect the person . . . from what the person reasonably believes to be the imminent use of unlawful force. However, a person:
>
> (1) is justified in using deadly force; and
> (2) does not have a duty to retreat;
> if the person reasonably believes that the force is necessary to prevent serious bodily injury to the person . . . No person in this state shall be placed in legal jeopardy . . . for protecting the person . . . by reasonable means necessary.

To succeed on his claim of self-defense, Noel was required to demonstrate that: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or serious bodily harm. Hood v. State, 877 N.E.2d 492, 497 (Ind. Ct. App. 2007), trans. denied (citing Wallace v. State, 725 N.E.2d 837, 840 (Ind. 2000)).

The State must then disprove at least one of those elements beyond a reasonable doubt in order to rebut the defendant's claim of self-defense. Id. (citing Miller v. State, 720 N.E.2d 696, 700 (Ind. 1999)). In order to disprove the claim, the State may either rebut the defense directly, by presenting affirmative evidence that the defendant did not act in self-defense, or, it may rely on the sufficiency of its evidence in chief. Id. The fact-finder determines whether the State has met its burden. Id.

Noel contends that the State's evidence was insufficient to rebut his claim of self-defense. We review an appeal for sufficiency of the evidence to rebut a claim of self-

---

[6] In addition, our supreme court has held that a jury instruction purporting to set out the elements of attempted murder must inform the jury that the State has prove beyond a reasonable doubt that the defendant, acting with the specific intent to kill the victim, engaged in conduct which was a substantial step toward such killing. Spradlin v. State, 569 N.E.2d 948, 950 (Ind. 1991).

defense in the same manner as we review a typical appeal for the sufficiency of the evidence. Hood, 877 N.E.2d at 497 (citing Wallace, 725 N.E.2d at 840). That is, we neither reweigh the evidence, nor assess the credibility of witnesses. Id. If sufficient evidence of probative value exists to support the conclusion of the trier of fact, we will not disturb the trial court's judgment. Id.

Here, the State presented sufficient evidence to rebut Noel's claim of self-defense. With respect to whether Noel was in a place where he had a right to be, it is clear that Noel was not, at least during the beginning of the altercation. Although the injuries and physical altercation took place on a public sidewalk, Noel began the confrontation by arriving at Patricia's home and knocking on the front door, looking for Parks, despite being told previously that he was not welcome there. While he did, in fact, retreat to the public sidewalk before engaging with Parks physically, his initial arrival at Patricia's home, and his decision to confront Parks there provides sufficient evidence to rebut his claim that he was in a place where he had a right to be.

In addition, Noel does not dispute that he delivered the first blow in the altercation with his hatchet. This was confirmed by the testimony of at least one eyewitness, as well. Noel also does not dispute that he asked Gates to inform him if Parks was ever at Patricia's home, and he readily admits that he was motivated to go to Patricia's home, in part, to confront Parks about the ongoing debt. Thus, the record demonstrates that Noel left his home armed and prepared for an altercation with Parks, and that Noel was the primary aggressor. This is sufficient to rebut Noel's claim that he acted without fault.

6

Finally, there was ample evidence to support a finding that Noel's professed fear of bodily injury or death was not reasonable or did not exist. Although Noel testified that Parks came at him with the box knife in an attempt to injure him, other evidence was introduced by multiple witnesses to indicate that Parks's knife was held down to his side, nearly unseen, and certainly not drawn initially in aggression toward Noel. Noel suffered no injury and presented no other evidence to support his claim that Parks attacked him. Both Noel's considerable size advantage over Parks and his choice of a more dangerous weapon, a hatchet, compared to Parks's small, box knife also supports a conclusion that Noel's claimed fear was not reasonable, if indeed he was fearful at all. Under all of these facts and circumstances, a reasonable trier of fact, in this case the presiding judge, could find that Noel's claim to have reasonably feared was sufficiently rebutted by the State.

Our standard of review prohibits us from reweighing the evidence or assessing the credibility of witnesses. Hood, 877 N.E.2d at 497. Here, there was sufficient evidence of probative value to rebut not one, but all three of the elements of Noel's self-defense claim. We therefore affirm the trial court's judgment.

Affirmed.

BAKER, J., and MAY., J. concur.