**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 10 2014, 9:16 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRIAN R. CHASTAIN**
Dillman Chastain Byrd, LLC
Corydon, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT F. PETTY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 72A05-1310-CR-538 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE SCOTT CIRCUIT COURT
The Honorable Bruce Markel, III, Special Judge
Cause No. 72C01-1106-FB-23

**June 10, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Robert Petty (Petty), appeals his conviction for unlawful possession of a firearm by a serious violent felon, a Class B felony, Ind. Code § 35-47-4-5. We affirm.

## ISSUES

Petty raises three issues on appeal which we restate as follows:

(1) Whether the State presented sufficient evidence to negate Petty's defenses of entrapment, mistake of fact, self-defense, and legal authority;

(2) Whether the sentencing statement was sufficient; and

(3) Whether Petty's sentence was inappropriate.

## FACTS AND PROCEDURAL HISTORY

In August 2010, Nina Keown (Keown), also Petty's ex-wife, was reported missing. On August, 7, 2010, Sheriff John Lizenby (Sheriff Lizenby) of the Scott County Sheriff's Department went to Petty's home, located on 7168 East Plymouth Road, Lexington, Indiana, to locate Keown. Sheriff Lizenby questioned Petty on Keown's whereabouts but Petty provided no forthright answer. Instead, Petty told Sheriff Lizenby that he had been receiving threats from people who suspected that he was involved in Keown's disappearance.[1] Petty also stated that he was "thinking about getting a gun" to which Sheriff

---

[1] The Pre-Sentencing Investigation report shows that on September 29, 2010, Petty was charged with the murder of Keown, removal of body from scene, and for being a habitual offender. On February 13, 2013, the jury returned a guilty verdict for voluntary manslaughter, the lesser included offense of murder. In addition, the jury found him guilty of the other two charges. On April 17, 2013, the trial court sentenced Petty to twenty years on voluntary manslaughter enhanced by thirty years due to his habitual offender status; three years for removal of body from scene; and three years for obstruction of justice. Petty's aggregate sentence was therefore fifty-six years.

Lizenby responded, "I think that's alright as long as you ain't out running around with it." (Transcript p. 125). On August 13, 2010, Chief Deputy Wayne Williams (Chief Deputy Williams) also questioned Petty about Keown's disappearance. Like before, he gave no information regarding her whereabouts, but reiterated that he was "thinking about getting a gun." (Tr. p. 69). However, Chief Deputy Williams never responded to Petty's comment.

At least a week after Keown was reported missing, Petty went to visit his father, Jerry Petty (Jerry), and repeated that some people were threatening him. Petty requested to borrow Jerry's shotgun. In spite of his request, Jerry told him that "well you know you're a felon, you need to find out something from somebody before you [] do something like that." (Tr. p. 106). Petty explained that he spoke to Sheriff Lizenby, who informed him that it was okay to obtain one. Thereafter, Jerry gave Petty the shotgun, and Petty took it home.

On August 21, 2010, Sheriff Lizenby received an arrest warrant from Clark County to arrest Petty for a probation violation. Alongside other officers, Sheriff Lizenby went over to Petty's house to arrest him. During Petty's arrest, the officers found Petty in possession of a shotgun loaded with one round of live ammunition.

On June 7, 2013, the State filed an Information charging Petty with Count I, unlawful possession of a firearm by a serious violent felon, I.C. § 35-47-4-5, a Class B felony, and Count II, habitual offender, I.C. § 35-50-2-8(a). On January 4, 2013, the State filed a motion to dismiss the habitual offender charge and subsequently amended the Information on

3

March 6, 2013, to include only the unlawful possession of a firearm by a serious violent felon. On June 19, 2013, Petty filed a motion to waive the jury trial and a bench trial was conducted on September 13, 2013. At the close of the evidence, the trial court found Petty guilty as charged. On October 13, 2013, the trial court held Petty's sentencing hearing and sentenced him to fifteen years consecutive to his fifty-six year sentence.

Petty now appeals. Additional information will be provided as necessary.

DECISION AND DISCUSSION

I. *Sufficiency of the Evidence*

Petty contends that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for unlawful possession of a firearm by a serious violent felon.

Our standard of review for sufficiency claims is well-settled. When we review a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. *Parahams v. State,* 908 N.E.2d 689, 691 (Ind. Ct. App. 2009) (citing *Jones v. State*, 783 N.E.2d 1132, 1139 (Ind. 2003)). We look only to the probative evidence supporting the judgment and the reasonable inferences therefrom to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id.* If there is substantial evidence of probative value to support the conviction, it will not be set aside. *Id.* It is the function of the trier of fact to resolve conflicts of testimony and to determine the weight of the evidence and the credibility of the witnesses. *Yowler v. State*, 894 N.E.2d 1000, 1002 (Ind. Ct. App. 2008).

4

Petty contends that the State failed to present sufficient evidence to sustain his conviction for unlawful possession of a firearm by a serious violent felon. Specifically, Petty states that when he cited his safety concerns to Sheriff Lizenby, he was told it was okay to possess a firearm.

The offense of possession of a firearm by a serious violent felon is governed by Indiana Code section 35-47-4-5, which provides that "[a] serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon, a Class B felony." Indiana Code section 35-47-4-5(a) defines a "serious violent felon" as a person who has been convicted of committing a serious violent felony, and subsection (b) defines robbery as "serious violent felony." The amended Charging Information alleged that Petty had two previous convictions of robbery, Class B felonies, under "Cause No. 72C01-9912-CF-73" and "Cause No. 10C01-0107-CF-77" and that he knowingly or intentionally possessed a "firearm." (Appellant's App. p. 29). Thus, the State was required to prove beyond a reasonable doubt that Petty had a previous conviction for robbery, and that he knowingly or intentionally possessed a firearm.

At trial, Petty admitted that he had been convicted of two serious violent crimes; as such, this leaves us with one issue to determine: whether Petty knowingly or intentionally possessed a firearm. Before the trial court and again on appeal, Petty cited four defenses negating the fact that he knowingly or intentionally possessed a firearm: entrapment, mistake of fact, self-defense, and legal authority. As such, Petty states that he was not culpable of the instant offense. We shall address each defense in turn.

## A. *Entrapment*

When we review a claim of entrapment, we use the same standard that applies to the sufficiency of evidence claims. *Lahr v. State*, 640 N.E.2d 756, 760 (Ind. Ct. App. 1994), *trans. denied.*

I.C. § 35-41-3-9 defines the defense of entrapment and provides:

> (a) It is a defense that
>   (1) the prohibited conduct of the person was the product of a law enforcement officer, or his agent, using persuasion or other means likely to cause the person to engage in the conduct; and
>   (2) the person was not predisposed to commit the offense.
> (b) Conduct merely affording a person an opportunity to commit the offense does not constitute entrapment.

When an accused raises this defense, the prosecution must prove that he was not innocently lured and enticed into the criminal activity. *Williams v. State*, 274 Ind. 94, 97, 409 N.E.2d 571, 574 (Ind. 1980). The defense of entrapment turns upon the defendant's state of mind, or whether the criminal intent originated with the defendant. *Kats v. State*, 559 N.E.2d 348, 353 (Ind. Ct. App. 1990), *trans. denied*.

The defense of entrapment may be rebutted by showing the defendant had a predisposition to commit the crime. *Lahr*, 640 N .E.2d at 760. The following factors are important in determining whether a defendant was predisposed to commit the charged crime:

> 1) the character or reputation of the defendant, 2) whether the suggestion of criminal activity was originally made by the government, 3) whether the defendant was engaged in criminal activity for a profit, 4) whether the defendant evidenced

reluctance to commit the offense, overcome by government persuasion, and 5) the nature of the inducement or persuasion offered by the government.

*Ferge v. State*, 764 N.E.2d 271 (Ind. Ct. App. 2002). Whether a defendant was predisposed to commit the crime charged is a question for the trier of fact. *Id*. The State must prove the defendant's predisposition beyond a reasonable doubt. *Id*.

Petty contends that Sheriff Lizenby's statement allowing him to possess a firearm was "mere enticement" only to be used against him. (Appellant's Br. p. 11). We disagree. Even if the statement might amount to inducement, the State provided sufficient evidence to allow the tier of fact determine that Petty was predisposed to commit the crime. Here, the suggestion of criminal activity came from Petty, who, during his conversation with Sheriff Lizenby, first brought it up. Furthermore, Petty did not show reluctance, but rather was persistent in obtaining a firearm. Petty never communicated to Sheriff Lizenby that he was a convicted felon when making the inquiry.

While Sheriff Lizenby provided Petty with the opportunity to commit the crime of unlawful possession of firearm, he did not importune Petty to commit that crime. We find that Petty demonstrated a predisposition to commit the offense. As a result, we conclude that the State presented sufficient evidence to rebut Petty's claim of entrapment.

### B. *Mistake of Fact*

Next, Petty argues that his possession of the firearm was justified due to a mistake of fact. Pursuant to Indiana Code section 35-41-3-7, a mistake of fact defense "is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a

matter of fact, if the mistake negates the culpability required for commission of the offense."

When the State has made a *prima facie* case of guilt, the burden is on the defendant to establish an evidentiary predicate of his mistaken belief of fact. *Saunders v. State*, 848 N.E.2d 1117, 1121 (Ind. Ct. App. 2006) (citing *Hoskins v. State*, 563 N.E.2d 571, 575 (Ind. 1990)). Upon invoking mistake of fact as a defense, the burden shifts to the defendant to satisfy three elements: "(1) that the mistake be honest and reasonable; (2) that the mistake be about a matter of fact; and (3) that the mistake negate the culpability required to commit the crime." *Potter v. State,* 684 N.E.2d 1127, 1135 (Ind. 1997) (citing *Smith v. State,* 477 N.E.2d 857, 863 (Ind. 1985)).

The State, however, retains the ultimate burden of proving beyond a reasonable doubt every element of the charged crime, including culpability or intent, which would in turn entail proof that there was no reasonably held mistaken belief of fact. *Saunders*, 848 N.E.2d at 1121 (citing *Hoskins*, 563 N.E.2d at 575-76). The State may meet its burden by directly rebutting evidence, by affirmatively showing that the defendant made no such mistake, or by simply relying upon evidence from its case-in-chief. *Id.* (citing *Bergmann v. State*, 486 N.E.2d 653, 660 (Ind. Ct. App. 1985)).

Petty argues by relying on Sheriff Lizenby's statement, it created a mistaken belief that he had the right to possess a firearm. In analyzing the reasonableness of Petty's mistaken belief, we find no indication that the mistake was honest or that it negates culpability for the offense. At trial, Petty admitted that he had been convicted of two robbery convictions, both Class B felonies; and that his probation officer had also explained

to him that he was not allowed to possess a firearm while on probation. Furthermore, Sheriff Lizenby testified that when he made the statement to Petty, had no direct knowledge of Petty's criminal history nor did he inquire into it.

It is well-settled that ignorance of the law is no excuse for criminal behavior. *See Scalpelli v. State*, 827 N.E.2d 1193, 1198 (Ind. Ct. App. 2005), *trans. denied.* Even if Petty reasonably believed Sheriff Lizenby's statement, and even if facts actually existed to support his adoption of such a belief, it did not excuse his actions. Nothing about Petty's made-up mistaken belief would excuse or negate the fact that he went over to Jerry's house—knowing he was a convicted felon—borrowed a firearm, and took it home.

Lastly, we find Petty's request to consider his testimony over that of Sheriff Lizenby's amounts to an invitation for this court to reweigh the evidence or judge the credibility of the witnesses, which we will not do. *See Parahams*, 908 N.E.2d at 691. As such, we find that the State provided sufficient evidence to disprove Petty's mistake of fact defense.

## C. *Self-Defense*

Indiana's self-defense statute provides:

(a) A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:

(1) is justified in using deadly force; and

(2) does not have a duty to retreat;

if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No

9

person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

I.C § 35-41-3-2.

"A valid claim of self-defense is a legal justification for an act that is otherwise defined as criminal." *Harmon v. State*, 849 N.E.2d 726, 730 (Ind. Ct. App. 2006). To prevail on a self-defense claim, a defendant must demonstrate that he was in a place where he had a right to be; did not provoke, instigate, or participate willingly in the violence; and had a reasonable fear of death or great bodily harm. *Id.* The amount of force a person may use to protect himself depends on the urgency of the situation. *Id.* at 730-31. However, if a person uses "more force than is reasonably necessary under the circumstances," his self-defense claim will fail. *Id.* at 731.

When a defendant claims he acted in self-defense, the State bears the burden of disproving his claim beyond a reasonable doubt. *Hood v. State*, 877 N.E.2d 492, 497 (Ind. Ct. App. 2007), *trans. denied*. To meet this burden, the State may rebut the defense directly, affirmatively demonstrate the defendant did not act in self-defense, or simply rely on the sufficiency of its case in chief. *Id.* Whether the State has met this burden is a question for the fact finder. *Id.* We may not reweigh the evidence or assess witness credibility, and if sufficient evidence of probative value supports the trial court's conclusion, we will affirm. *Id.*

Turning to the facts and circumstances of this case, we find that even though Petty may have reasonably feared for his life, he had no reason to obtain the firearm. The record shows that Petty created the situation requiring him to possess the firearm. At trial, the State

10

negated Petty's defense of self-defense by questioning Petty about his voluntary manslaughter conviction. Petty admitted that he had killed Keown. Petty also admitted that if he had confessed to killing Keown, he would have probably stopped the threats. Based on the foregoing, we find that the trial court was not required to believe Petty's self-serving testimony regarding the alleged *threats*. Furthermore, we find that Petty's perceived concern for his own safety did not justify his failure to comply with the law. We therefore conclude that the State provided sufficient evidence to disprove Petty's self-defense claim.

## D. *Legal Authority*

Lastly, Indiana Code section § 35-41-3-1, provides that "[a] person is justified in engaging in conduct otherwise prohibited if he has legal authority to do so." Petty interprets this provision of the statute to mean that since Sheriff Lizenby communicated to him that it was acceptable to obtain a firearm, he had legal authority to be in possession of it. However we find Petty's application of the statute contrary to the spirit of the law. Looking at precedent cases, the defense of legal authority has not been interpreted to give a police officer legal authority to override the law. So far, the defense of legal authority has only been interpreted to legally allow a parent to engage in reasonable discipline of a child, even if such conduct would otherwise constitute battery. *See State v. Fettig*, 884 N.E.2d 341, 345 (Ind. Ct. App. 2008). Furthermore, Petty cites no case law to support his defense of legal authority. Based on the foregoing, Petty's defense of legal authority fails.

## II. *Sentencing Statement*

11

Petty argues that the trial court abused its discretion by failing to adequately support its imposition of a fifteen year sentence consecutive to his current sentence of fifty-six years. "A trial court's sentencing determination is within its discretion, and we will reverse only for an abuse of that discretion." *Anglemyer v. State*, 868 N.E.2d 482, 490 (Ind. 2007), *clarified on reh'g by* 875 N.E.2d 218 (Ind. 2007). The trial court abuses its discretion when its decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id*. We may find an abuse of discretion if the trial court does not provide a sentencing statement, the sentencing statement is not supported by the record, the sentencing statement omits reasons clearly supported by the record and advanced by the defendant, or the trial court's reasons for sentencing are improper as a matter of law. *Id*. at 490-91. In a felony case, the trial court must give a reasonably detailed recitation of the reasons for the sentence imposed. *Id*. at 490. In reviewing sentencing decisions, we consider both the written and oral sentencing statements. *Corbett v. State*, 764 N.E.2d 622, 631 (Ind. 2002).

Here, we find that the sentencing statement was sufficient. The trial court cited multiple aggravating factors—offense was committed while on probation, Petty had an extensive criminal history involving six felony convictions, Petty had never completed probation since 1999, and was currently incarcerated for voluntary manslaughter. We therefore conclude that the trial court did explain its reason for imposing a consecutive sentence, and affirm the sentence imposed.

III. *Inappropriate Sentence*

12

In his last argument, Petty claims that his fifteen year sentence is inappropriate in light of the nature of the offense and the character of the offender. Indiana Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." The burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). "Ultimately the length of the aggregate sentence and how it is to be served are the issues that matter." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). Whether we regard a sentence as appropriate at the end of the day turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and a myriad of other considerations that come to light in a given case. *Id*.

The advisory sentence is the starting point the legislature has selected as an appropriate sentence for the crime committed. *Abbott v. State*, 961 N.E.2d 1016, 1019 (Ind. 2012). The advisory sentence for a Class B felony is ten years, with a minimum of six and a maximum of twenty years. Here, the trial court imposed a fifteen year sentence.

In reviewing the nature of the offense, despite Petty's claim that the motivation behind possessing the firearm was for protection, the record shows he was a convicted felon and he should not have possessed a firearm. When Sheriff Lizenby and other police officers went over to Petty's house to effect an arrest warrant, they found him in possession of a shotgun loaded with one round of live ammunition. When asked if it was his, he answered in the affirmative and also stated that he had obtained the firearm from Jerry.

13

As for Petty's character, the Pre-Sentence Investigation report reveals that he has a significant criminal history which includes armed robbery, burglary, theft, battery, domestic battery, voluntary manslaughter, removal of body from scene, and obstruction of justice. In addition, Petty committed the instant offense while on probation.

Based on the foregoing, we cannot say that his fifteen-year sentence is inappropriate. In light of the nature of the offense and his character, we cannot say that Petty's sentence is such an outlier that we should exercise our discretion to reduce it.

## CONCLUSION

In sum, we find that the State presented sufficient evidence to rebut Petty's defenses of entrapment, mistake of fact, self-defense and legal authority. We further hold that the trial court issued a sufficient sentencing statement, and that it did not abuse its discretion when it sentenced Petty.

Affirmed.

ROBB, J. and BRADFORD, J. concur