## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 19 2017, 10:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Randy M. Fisher
Deputy Public Defender
Leonard, Hammond, Thoma & Terrill
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Carlos D. Staten,

*Appellant-Defendant,*

*v.*

State of Indiana,

*Appellee-Plaintiff.*

April 19, 2017

Court of Appeals Case No.
02A03-1611-CR-2612

Appeal from the Allen Superior
Court

The Honorable John F. Surbeck,
Judge

Trial Court Cause No.
02D06-1605-F2-11

**Bradford, Judge.**

# Case Summary

[1]     Appellant-Defendant Carlos D. Staten and Danette Sanchez began dating in 2014 and had one child together, but by April of 2016 were no longer in a relationship. On the morning of April 10, 2016, Sanchez was in her home when Staten entered, locked the door, and confronted her about talking to somebody on her telephone. Staten punched Sanchez in the face with his fist several times, eventually knocking her to the ground, and continued to punch her as he sat on her back. Staten also punched Sanchez seven to ten times in the face as he sat on her chest and pinned her arms down with his knees. At some point, Staten kicked Sanchez in the face, breaking one of her teeth. Sanchez eventually shot a gun in Staten's direction, causing him to flee.

[2]     Following a jury trial, Staten was found guilty of several charges and eventually sentenced for Level 5 felony battery and for being a habitual offender. Staten contends that Appellee-Plaintiff the State of Indiana ("the State") failed to produce evidence sufficient to sustain his conviction or to rebut his claim of self-defense. Because we disagree, we affirm.

# Facts and Procedural History

[3]     Staten and Sanchez began dating in 2014 and had one child together, but by April of 2016 were no longer involved. On April 10, 2016, at approximately 10:40 a.m., Sanchez was allowing her car to warm up outside her Fort Wayne home when Staten came from the rear of the home, locked the front door, and

said, "[b]****, let me see your phone. I know you're talking to somebody." Tr. p. 62. When Sanchez told Staten that she was "not about to do this with him right now[,]" he jumped on her and began to hit her in the face with his fist. Tr. p. 62. Staten punched Sanchez in the face "[t]oo many [times] to count[,]" and when she was knocked to the ground, sat on her back while examining her telephone and continuing to punch her. Tr. p. 63.

[4] Apparently after seeing a picture sent to Sanchez by a male friend, Staten told her to get up and then "body slam[med]" her on her son's swing. Tr. p. 64. Sanchez was now on her back, and Staten sat on her chest, held her arms down with his knees, and continued to punch her in the face seven to ten times. Staten told Sanchez to crawl into the bedroom, and, when she began to crawl on her hands and knees, kicked her back down to the floor. Sanchez "kind of like army crawled" into the bedroom. Tr. p. 65. When Sanchez asked Staten to stop and told him that she loved him, he said that she did not love him, grabbed her by the hair, and kicked her in the mouth, breaking off more than half of one tooth. Staten briefly left the bedroom, giving Sanchez the opportunity to retrieve a gun that was under the pillows. When Staten returned, Sanchez fired once in Staten's direction, and he fled. Sanchez sustained a quarter-inch laceration on her lower lip that did not heal for a month; was unable to see out of her right eye for several weeks; and had bruises on her arms, ears, and head. Staten kicked out one of Sanchez's front teeth, which could not be fixed at the hospital. Staten's beating of Sanchez caused her

pain of between eight and nine on a scale from one to ten, with ten being the highest.

[5] On May 10, 2016, the State charged Staten with Level 2 felony burglary, Level 3 felony criminal confinement, Level 5 felony battery, Level 6 felony domestic battery, Level 6 felony intimidation, and Class A misdemeanor interference with the reporting of a crime. On June 15, 2016, the State amended the charging information to include a habitual offender enhancement. On September 19, 2016, the State dismissed the burglary charge. On October 5, 2016, following jury trial, the jury found Staten guilty of battery, domestic battery, and intimidation and found him to be a habitual offender. On November 4, 2016, the trial court sentenced Staten to five years of incarceration, with two suspended to probation, and enhanced his sentence by six years due to his habitual offender status. The trial court vacated Staten's convictions for domestic battery and intimidation.

# Discussion and Decision

## I. Sufficiency of the Evidence

[6] Staten contends that the State failed to produce sufficient evidence to sustain his conviction for Level 5 felony battery. When reviewing the sufficiency of the evidence, we neither weigh the evidence nor resolve questions of credibility. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind. 1995). We look only to the evidence of probative value and the reasonable inferences to be drawn therefrom which support the verdict. *Id*. If from that viewpoint there is evidence of probative

value from which a reasonable trier of fact could conclude that the defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Spangler v. State*, 607 N.E.2d 720, 724 (Ind. 1993).

[7] In order to convict Staten of Level 5 felony battery on Sanchez, the State was required to establish that he "knowingly or intentionally … touche[d her] in a rude, insolent, or angry manner [when t]he offense results in serious bodily injury" to Sanchez. Ind. Code § 35-42-2-1(c), -1(g)(1). In challenging his conviction, Staten argues that the central evidence presented at trial was unreliable and insufficient to support his convictions.

[8] Staten points to many alleged inconsistencies in Sanchez's testimony and suggests several other possible scenarios that he claims are consistent with the physical evidence. Sanchez testified unequivocally that Staten was the person who caused her rather extensive injuries by beating her with his fist and kicking her. The jury was entitled to credit Sanchez's testimony, and it did so. It is well-settled that a criminal conviction may rest upon the testimony of a single witness, even if uncorroborated. *See, e.g.*, *Slaughter v. State*, 531 N.E.2d 185, 186 (Ind. 1988) ("A conviction may be sustained on the uncorroborated testimony of a single witness."). Staten's argument is nothing more than an invitation to reweigh the evidence, which we will not do.

## II. Self-Defense

[9] Staten also argues that the State failed to sufficiently rebut his claim of self-defense. A valid claim of self-defense is legal justification for an otherwise

criminal act. *Birdsong v. State*, 685 N.E.2d 42, 45 (Ind. 1997). The defense is defined in Indiana Code Section 35-41-3-2(c): "A person is justified in using reasonable force against another person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force."

[10] When a person raises a claim of self-defense, he is required to show three facts: (1) he was in a place where he had a right to be; (2) he acted without fault; and (3) he had a reasonable fear of death or serious bodily harm. *Wallace v. State*, 725 N.E.2d 837, 840 (Ind. 2000). Once a person claims self-defense, the State bears the burden of disproving at least one of these elements beyond a reasonable doubt. *Hood v. State*, 877 N.E.2d 492, 497 (Ind. Ct. App. 2007), *trans. denied.* The State may meet this burden by rebutting the defense directly, by affirmatively showing the person did not act in self-defense, or by relying upon the sufficiency of its evidence in chief. *Id.* Whether the State has met its burden is a question of fact for the factfinder. *Id.* The trier of fact is not precluded from finding that a person used unreasonable force simply because the victim was the initial aggressor. *Birdsong*, 685 N.E.2d at 45.

[11] If a person is convicted despite his claim of self-defense, we will reverse only if no reasonable person could say that self-defense was negated by the State beyond a reasonable doubt. *Wilson v. State*, 770 N.E.2d 799, 800-01 (Ind. 2002). The standard on appellate review of a challenge to the sufficiency of evidence to rebut a claim of self-defense is the same as the standard for any sufficiency of the evidence claim. *Id.* at 801. We neither reweigh the evidence nor judge the

credibility of witnesses. *Id.* If there is sufficient evidence of probative value to support the conclusion of the trier of fact, the verdict will not be disturbed. *Id.*

[12] Staten suggests that the only reasonable interpretation of the evidence is that Sanchez pulled her gun on him at the beginning of the altercation and that any injuries he inflicted upon her were in self-defense. We disagree, to say the least. As mentioned, the jury was entitled to believe Sanchez's testimony that Staten was the initial aggressor, and it did. As with Staten's previous argument, this claim is nothing more than an invitation to reweigh the evidence, which we will not do.

[13] We affirm the judgment of the trial court.


Najam, J., and Riley, J., concur.