

I N   T H E

# Indiana Supreme Court

Supreme Court Case No. 20S-CR-22

## Anthony Gammons, Jr.
*Appellant (Defendant below)*



FILED

Jun 26 2020, 12:51 pm

C L E R K
Indiana Supreme Court
Court of Appeals
and Tax Court

–v–

## State of Indiana
*Appellee (Plaintiff below)*

Argued: March 12, 2020 | Decided: June 26, 2020

Appeal from the Marion Superior Court,
No. 49G06-1706-F1-21991
The Honorable Mark D. Stoner, Judge

On Petition to Transfer from the Indiana Court of Appeals,
No. 18A-CR-3005

**Opinion by Justice Massa**

Chief Justice Rush and Justices David, Slaughter, and Goff concur.

**Massa, Justice.**

At his trial for attempted murder and carrying a handgun without a license, Anthony Gammons, Jr. asserted that he acted in self-defense. According to Gammons, he feared for his and his son's lives when he shot the intoxicated and aggressive Derek Gilbert—testifying that he knew Gilbert had a history of violence and that Gilbert had threatened him—with a gun he acknowledged he was carrying illegally. After the court instructed the jury that he could not assert self-defense if he committed a crime that was "directly and immediately related" to his confrontation with Gilbert, the jury found Gammons guilty.

Indiana's self-defense statute instructs that "a person is not justified in using force if the person," among other things, "is committing . . . a crime." Ind. Code § 35-41-3-2. But because "literal application" of that statute can lead to absurd results, we have held that "there must be an immediate causal connection between the crime and the confrontation." *Mayes v. State*, 744 N.E.2d 390, 393, 392 (Ind. 2001). Because the jury instruction used here—that a crime and confrontation need only be "related" to defeat self-defense—diluted this causal standard, and because we can't conclude that this instructional error was harmless, we reverse and remand for a new trial.

## Facts and Procedural History

According to his testimony, Anthony Gammons, Jr., after going to the movies and paintballing with his ten-year-old son, intended to briefly swing by his incarcerated cousin's house during a party to make sure nothing was broken. But when he and his son pulled up to the home, Gammons saw a crowd milling about outside, including Derek Gilbert. In the decade they'd been acquainted, Gammons had come to believe that Gilbert liked to get drunk, liked to start fights, and liked to knock out, shoot at, bully, and rob people, including his own friends. And Gammons knew that Gilbert had been previously charged with murder.

So when he stepped out of his car and an intoxicated Gilbert immediately started accosting him, Gammons was put on edge. Despite

Gammons openly carrying a handgun and attempts by Gammons and bystanders to calm the situation, Gilbert persisted, squaring up as if to punch Gammons, pulling at his waistband, and asking if Gammons was "casket ready." Tr. Vol. III, p.7. Gammons then drew his gun and shot at Gilbert because, as he later avowed at trial, he feared for his life and for that of his son. But even after he was hit, Gilbert did not relent. Instead, while spinning around, Gilbert continued "aggressing" toward Gammons and reaching in his pants, "like he was grabbing for something." Tr. Vol. III, p.8. But as soon as Gammons saw Gilbert "retreat and run away," he "stopped shooting," professing that he "was in shock" at how the events had unfolded. *Id.* After a few moments passed, Gammons calmly walked back to his car and drove off. Although he was struck six times, Gilbert survived.

Gammons was later charged with attempted murder and carrying a handgun without a license. At his jury trial, Gammons—who conceded that he was carrying the handgun without a license—asserted that he shot Gilbert only in self-defense. Gilbert, however, disputed this explanation, testifying that he did not wantonly confront Gammons. Instead, despite repeatedly acknowledging that his memories of the incident were blurry, Gilbert surmised that the two argued when Gammons confronted him over a woman. After that brief and nonviolent quarrel subsided, Gilbert and Gammons shook hands and went their separate ways. But just as Gilbert thought the encounter was over, Gammons pulled his weapon and shot Gilbert while his back was turned. "I got shot for no reason," claimed Gilbert. Tr. Vol. II, p.79.

At the end of his trial, Gammons proposed that the court instruct the jury that he was "justified in using deadly force" if he believed it was "necessary to prevent serious bodily injury to himself and to prevent the commission of the forcible felony battery against himself." App. Vol. III, p.102. But the trial court, over his objection, slightly tweaked this tendered language and inserted language derived from Indiana Pattern Jury Instruction 10.0300—that "a person may not use force if," among other things, "he is committing a crime that is directly and immediately related to the confrontation." App. Vol. III, p.110. After the State emphasized in closing that a person "can't be doing anything illegal at the time" he

claimed he was acting in self-defense, Tr. Vol. III, p.27, the jury found Gammons guilty of both charges.[1] On appeal, our Court of Appeals affirmed. The panel, "[w]ithout deciding" whether the trial court erred instructionally, held that "any error was harmless." *Gammons v. State*, 136 N.E.3d 604, 612 (Ind. Ct. App. 2019), *vacated*. "[B]ecause Gammons shot at an unarmed man eight times, with some shots piercing Gilbert in the back and buttocks," the panel concluded, "the jury could not have found he acted in self-defense." *Id.* Gammons sought transfer, which we granted.

## Standard of Review

Ordinarily, "[i]nstructing the jury is a matter within the discretion of the trial court, and we'll reverse only if there's an abuse of that discretion." *Cardosi v. State*, 128 N.E.3d 1277, 1284 (Ind. 2019). But "[w]hen the appellant challenges the instruction as an incorrect statement of law," as here, "we apply a de novo standard of review." *Batchelor v. State*, 119 N.E.3d 550, 554 (Ind. 2019). If we find "the challenged instruction to be erroneous, we presume the error affected the verdict, and we will reverse the defendant's conviction unless the verdict would have been the same under a proper instruction." *Kane v. State*, 976 N.E.2d 1228, 1232 (Ind. 2012) (internal quotation omitted). "'[R]eversal is required,'" in other words, "'if the jury's decision may have been based upon an erroneous instruction.'" *Hawkins v. State*, 100 N.E.3d 313, 319 (Ind. Ct. App. 2018) (quoting *Hernandez v. State*, 45 N.E.3d 373, 378 (Ind. 2015)).

## Discussion and Decision

"A valid claim of self-defense is legal justification for an otherwise criminal act." *Coleman v. State*, 946 N.E.2d 1160, 1165 (Ind. 2011). Although the self-defense statute instructs that a person cannot use force defending himself if he, among other things, "is committing . . . a crime," Ind. Code §

---

[1] The trial court merged the carrying verdict with the attempted murder conviction upon sentencing.

35-41-3-2, we do not strictly apply that statute because "[t]he legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result," *Mayes v. State*, 744 N.E.2d 390, 393 (Ind. 2001). Instead, we have held that "there must be an immediate **causal connection** between the crime and the confrontation." *Id.* at 394 (emphasis added). Gammons contends that the trial court erred by instructing that he could not assert self-defense if he was "committing a crime that [wa]s directly and immediately **related to** the confrontation." App. Vol. III, p.110 (emphasis added).[2]

We agree—the instruction stemming from Pattern Jury Instruction 10.0300 was an imprecise statement of law. By instructing that the crime and confrontation must merely be "directly and immediately related," the instruction weakened the causal connection required to preclude a claim of self-defense. While the pattern instruction uses the word "connected" instead of "related," we view the court's slight word revision as a distinction without a difference. Two events are related if they are "connected by reason of an established or discoverable relation" and are connected when they are "joined or linked together." *Related*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/related (last visited June 26, 2020); *Connected*, Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/connected (last visited June 26, 2020). By requiring that the crime and confrontation just be joined or linked, neither "connected" nor "related" suggest the element of causation demanded by *Mayes*. Justice Boehm's concurrence in *Mayes* presaged this diminution of the standard, warning that the Court—by rephrasing that "the evidence must show that **but for** the defendant committing a crime, the confrontation resulting in injury to the victim would not have occurred"—left open circumstances where a "defendant should be free to claim self-defense." *Mayes*, 744 N.E.2d at 394

---

[2] Gammons also asserts that his right to bear arms for self-defense under Article 1, Section 32 of our Indiana Constitution was impinged. But because "we generally avoid addressing constitutional questions if a case can be resolved on other grounds," *Girl Scouts of S. Illinois v. Vincennes Indiana Girls, Inc.*, 988 N.E.2d 250, 254 (Ind. 2013), we needn't resolve this contention.

(majority opinion) (emphasis added), 396 (Boehm, J., concurring). We now concur with Justice Boehm: "this 'but for' test is too broad." *Id.* at 396. Read literally, this formulation could foreclose the defense in an instance where a defendant's crime was tenuously connected with the confrontation, like the defense being unavailable to a defendant who "is illegally gambling and a fight erupts because the victim believes the defendant is cheating[, leading] to the victim's death." *Id.* at 396–97 (citing *State v. Leaks*, 103 S.E. 549, 551 (S.C. 1920)). Since this "but for" test can impede the defense in the same unjust and absurd ways as a literal reading of the statute, we reject that rephrasing and reiterate that self-defense is barred only when there is "an immediate causal connection between the crime and the confrontation." *Id.* at 394 (majority opinion).

And we agree with Gammons that this instructional error could have served as the basis for the jury's decision to convict. Because Gammons asserted that he fired the shots only until Gilbert retreated, we cannot be sure that the trial's outcome would have been the same under a proper instruction and presume this error affected the verdict. To be sure, "[f]iring multiple shots undercuts a claim of self-defense" once a defendant disables the purported aggressor. *Id.* at 395 n.2 (citation omitted); *see also Schlegel v. State,* 238 Ind. 374, 383, 150 N.E.2d 563, 567 (1958) (explaining that if a victim falls to the ground after a first shot is fired in self-defense, a second shot is unnecessary). But the account conveyed by Gammons is like that made by a defendant who—after an aggressive and intoxicated driver who almost hit him with his car said "I got something for your ass" and reached for his waistline—grabbed a gun from his van and fired two shots, striking the driver. *Hood v. State*, 877 N.E.2d 492, 494, 497 (Ind. Ct. App. 2007), *trans. denied*. After the driver continued staggering and allegedly lunged forward, Hood fired four more shots until the driver collapsed. *Id.* Following Hood's conviction of voluntary manslaughter at trial, however, our Court of Appeals reversed and remanded for a new trial, holding, among other things, that it didn't "find the fact that six shots were fired to be dispositive" when Hood asserted that the driver was still coming toward him as he fired. *Id.* at 496. *See also Brand v. State*, 766 N.E.2d 772, 776–77 (Ind. Ct. App. 2002)

(reversing conviction despite defendant firing four shots purportedly in self-defense), *trans. denied*.

Gammons, like Hood, avers that he kept shooting only because his assailant continued at him after he fired his first shots. And Gammons claims that Gilbert was only struck in the back and buttocks because he spun around while he continued advancing. This account differs from an instance where the defense has been repudiated when evidence showed that a defendant

- shot a victim who "was either falling down or already on the ground," and "at least one bullet struck her in the back," *Mayes*, 744 N.E.2d at 395 n.2;
- fired three times after a victim raised his hands and said "Do what you got to do," *Randolph v. State*, 755 N.E.2d 572, 574 (Ind. 2001);
- shot one victim in the chest and then "backed up as he was firing, fatally hitting [another victim] three times," all while "he stopped, reloaded, and continued firing," *Brown v. State*, 738 N.E.2d 271, 272 (Ind. 2000);
- smiled and "brandished a handgun and fired multiple shots at [a victim] as he approached his vehicle," *Miller v. State*, 720 N.E.2d 696, 700 (Ind. 1999);
- "chopped and shot [victims] several times, even after they were incapacitated," *Birdsong v. State*, 685 N.E.2d 42, 46 (Ind. 1997);
- shot a victim—after he fell to his hands and knees—a second time, *Hill v. State*, 532 N.E.2d 1153, 1153 (Ind. 1989);
- shot a victim—"who was unarmed and on the ground pleading for his life"—multiple times, *Almodovar v. State*, 464 N.E.2d 906, 909 (Ind. 1984);
- shot a victim "multiple times in the back" as he asked "'What's all the loud talk about?' and started to get out of the vehicle," *James v. State*, 96 N.E.3d 615, 617 (Ind. Ct. App. 2018), *trans. denied*;
- shot a victim after he "went to his knees and put his arms and hands up in a defenseless position," *Fuentes v. State*, 952 N.E.2d 275, 279 (Ind. Ct. App. 2011), *trans. denied*;

- fired "multiple shots, one of which hit an innocent bystander" after a fight was already over, *Simpson v. State*, 915 N.E.2d 511, 515 (Ind. Ct. App. 2009), *trans. denied*; or
- "shot first," and "[t]wenty-three of the thirty-two bullet casings recovered from the scene were linked to" his gun, *Patton v. State*, 837 N.E.2d 576, 581 (Ind. Ct. App. 2005).

Unlike a defendant shooting at an incapacitated or defenseless victim, Gammons maintains that he shot only until Gilbert retreated. Based on his account of the events leading up to the confrontation, we cannot say with certainty that the jury would have convicted Gammons without hearing the erroneous instruction.

## Conclusion

We do not pass judgment today on whether Gammons acted in self-defense when he shot Gilbert. That is a question for the jury, which may yet reject this justification. But we cannot categorically bar those jurors from considering the defense when a crime is merely "related to" or "connected to" a confrontation—rather, as we held in *Mayes*, there must be an immediate causal connection between the two. Because we cannot conclusively determine that the verdict would have been the same absent this instructional error, we reverse and remand for a new trial.

Rush, C.J., and David, Slaughter, and Goff, JJ., concur.

ATTORNEYS FOR APPELLANT

Joel M. Schumm
Indianapolis, Indiana

Valerie K. Boots
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Angela N. Sanchez
Assistant Section Chief, Criminal Appeals
Indianapolis, Indiana

Caryn N. Szyper
Deputy Attorney General
Indianapolis, Indiana